# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## DALTON ADDING MACHINE COMPANY V. COMMONWEALTH.

### March 16, 1916.

### Absent, Keith, P.

1. FOREIGN CORPORATIONS—*Doing Business in State—Interstate Commerce—License.*—A foreign corporation has the unquestionable right to so limit and conduct its business in this State as to keep the same strictly within the accepted meaning of interstate commerce, and when it does so no license tax can be imposed upon it.

2. FOREIGN CORPORATIONS—*Taking Orders for Goods—Interstate Commerce.*—Where the agent of a foreign corporation exhibits a sample machine to a customer, and the customer, when he desires to buy, signs an order for the machine and its accessories addressed to the company at its home office, and the machine is shipped, if the order is accepted, from the factory to the customer or to the agent in this State to be delivered to the customer, this is strictly interstate commerce, protected by the commerce clause of the Constitution, and the State can impose no conditions, licenses, or any burdens whatever upon such business.

3. FOREIGN CORPORATIONS — *Interstate Commerce — Nature of Transaction—Diversity of Citizenship.*—While transactions between citizens of different States are generally transactions of interstate commerce, this is a mere incident, and it is the character of the transaction and not the citizenship or the location of the parties that determines whether it is interstate or intrastate. The mere fact that a contract made in this State is required to be approved at the home office of the foreign corporation does not render the transaction one of interstate commerce.

4. FOREIGN CORPORATIONS—*Interstate Commerce.*—Where a contract with a foreign corporation is negotiated between the agent of the seller in this State and a purchaser in this State for the sale of machinery which is in this State, and the terms of the sale are completed and the contract fully performed in this State, the transaction is an intrastate transaction.

5. FOREIGN CORPORATIONS—*Doing Business in State—Test—Taxation.*—The test to determine whether a foreign corporation transacts such intrastate business as can be reached by State taxation is whether its

domestic business is substantial in its essence, and whether it may be reasonably separated from its interstate commerce. The question does not depend upon a comparison of its intrastate with its interstate commerce. The mere fact that a foreign corporation does a comparatively small business within the State does not render unconstitutional a statute imposing a license upon it for doing such business. The opportunity to do business subject to the protection of our laws, and all the advantages which arise from our markets and our financial and other resources, is the thing which·is made the subject of excise.

6. FOREIGN CORPORATIONS — *Doing Business in State — Evidenced by Method of Doing Business.*—A foreign corporation is doing a substantial part of its business in this State when the following conditions exist: It brings its machines into this State before selling them, and maintains a stock of machines for exhibition and trial and sells such machines in this State after transportation in interstate commerce has been concluded and they have been commingled with the general mass of property in the State; it rents such machines and collects rents therefor from its customers in this State; it buys and exchanges machines for machines made by other manufacturers and sells such machines so received in exchange at will; it employs a mechanic in this State and enters into contracts for repairing machines owned by persons in this State, and collects charges therefor; it keeps on hand in this State certain parts of machines and supplies suitable for use upon the machines which are freely sold from time to time by its agent in this State to its customers here.

Appeal from the State Corporation Commission.

*Affirmed.*

The opinion states the case.

*Harold S. Bloomberg,* for the complainant.

*Jno. Garland Pollard, Attorney-General,* and *C. B. Garnett, Assistant Attorney-General,* for the Commonwealth.

KELLY, J., delivered the opinion of the court.

This is an appeal from an order of the State Corporation Commission, by which the Dalton Adding Machine Company,

a foreign corporation, was assessed with a fine of one thousand dollars upon a charge .of transacting business in this State without first obtaining the certificate of authority as provided for in section 1104 of the Code of Virginia.

It is not denied that this company is, and has been for several years, doing an extensive business in this State, but the contention on its behalf is that this business has been of such a character and so conducted in all respects as to bring it within the meaning and consequent protection of the commerce clause of the Federal Constitution.

The first impression obtained from reading the record is that the company's purpose has been to avoid, not to say evade, the license tax provided for by section 1104 of the Code; and, upon a more mature consideration this impression becomes a conviction that the method of transacting a substantial part of the business in question is, as found by the Corportion Commission, "a mere device for the purpose of avoiding the State statutes."

A foreign corporation has the unquestionable right to so limit and conduct its business in this State as to keep the same strictly within the accepted meaning of interstate commerce, and, when it does so, no license tax can be imposed upon it. But it seems to us in this case that the effort to escape the tax has been such a conspicuous and dominant feature in the course of business, and so plainly marked by irregular and unusual practices, explainable only on the theory that they were intended to place an artificial interstate aspect on a portion of the business, that the corporation has not only laid itself liable to a just suspicion, but has thereby created a presumption, not rebutted by any evidence, against the good faith of its claim to immunity.

The opinion of the chairman of the State Corporation Commission, which is a part of the record, appears to us to correctly and satisfactorily dispose of this controversy, and is hereby adopted as the opinion of this court. It is as follows:

"This proceeding is the sequel of the case of *Dalton Adding Machine Company* v. *State Corporation Commission of Virginia*, 213 Fed. 889, which was affirmed, 236 U. S. 699, 35 Sup. Ct. 480, 59 L. Ed. 797.

"The Dalton Adding Machine Company, now an Ohio corporation, is charged with violating section 1104 of the Code of Virginia, requiring foreign corporations, as a prerequisite to doing business in the State, to 'present to the State Corporation Commission (a) a written power of attorney executed in duplicate, appointing some person residing in this State its agent, upon whom all legal process against the corporation may be served, and who shall be authorized to enter an appearance in its behalf; (b) two duly authenticated copies of the charter of the corporation; and (c) a certificate of the auditor of public accounts, showing the payment into the treasury of the fee required by law to be paid by such corporation, and shall obtain from the said Corporation Commission a certificate of authority to transact business in the State.'

"Section 1105 provides that any foreign corporation which shall transact business in this State without first obtaining such certificate of authority shall be fined 'not less than ten dollars nor more than one thousand dollars, such fine to be imposed by the State Corporation Commission, whose duty it shall be to see that the provisions of the preceding section are complied with.'

"The facts are that the Dalton Adding Machine Company is a manufacturer of, and dealer in, adding, listing and calculating machines, which it formerly manufactured at Poplar Bluff, Missouri, but since June, 1914, at Cincinnati, Ohio, and distributes through its salesmen to its customers wherever they can be found. Its authorized capital is $2,750,000, and its business in Virginia since 1912 has amounted to more than $18,000 a year.

"About two-thirds of its gross sales in Virginia are consummated as follows:

"The agent exhibits a sample machine to the customer, and if the customer desires to buy he signs an order for a machine, describing its accessories accurately, addressed to the Dalton Adding Machine Company at its home office; if satisfactory to the company, a machine is shipped from the factory either to the customer or to the agent in Virginia, to be delivered to the customer.

"As to this part of the business there is no difference of opinion. It is strictly interstate commerce, protected by the commerce clause of the Constitution, and the State can impose no condition, license tax, or any other burden whatever, upon such business.

"The other one-third of the business, however, is the cause of this controversy, and is thus transacted:

"The machine is left with the desired customer for trial for a reasonable time, and afterwards, if he concludes to buy, he signs an order for that identical machine, which had been previously put in his possession, which order is sent to the Dalton Adding Machine Company at its home office, now in Ohio, and the sale is then said to be consummated with the approval of the company.

"It is contended by the Commonwealth that this business is intrastate business, and constitutes transacting business in the State of Virginia, in violation of the statute referred to.

"In addition to this, the sales agent of the Dalton Adding Machine Company keeps on hand in his office in the city of Richmond a stock of paper and ribbons, suitable for use upon the machines, and from time to time supplies the customers of the company with ribbons and paper from this stock so held in the city of Richmond. Such sales are reported to the home office in Ohio, but require no previous or subsequent approval, the agent in Virginia having authority to consummate such sales.

"In addition to this, the company has been entering into contracts to keep in repair for two years all of the machines

sold to its Virginia customers. This time has now been shortened, and the company when making sales only agrees to keep the machines in repair for one year from the date of sale.

"In addition to this, after the expiration of the time during which the company is thus under contract to keep the machines in repair, the company enters into what is called a repair contract, and, for ten dollars a year, undertakes to keep such machines in good repair. The agent of the company also keeps in stock at his office in Richmond certain parts, which are supplied to the users of the machines and charged for by the company. In order to make these repairs the company regularly employs a mechanic in this State, whose duty it is as the representative of the company to comply with these repair contracts. This mechanic also makes additional repairs in Virginia upon the demand of the customers who have no such repair contracts—the time of the mechanic being reported to the home office—and bills are made out in the name of the company for such repairs and collected of the Virginia customer.

"In addition to this, the company rents its machines to persons in Virginia, delivers the machines to the renter and collects rent for the use thereof, which rents, in case the renter subsequently decides to buy that particular machine, are credited on the purchase price, the company reserving the right to resume possession of the machine in case of violation of the rental contract, or upon its expiration.

"It also, in making sales, sometimes receives machines made by other manufacturers in exchange for its machines, which machines so received in exchange it disposes of as best it can.

"It is earnestly contended for the defendant company that because the salesman in Virginia is denied express authority to transfer title to the machines which are sold, and that in every instance the contracts provide that the order is subject to the approval of the Dalton Adding Machine Company at its

home office, now in Ohio, and the transaction is between citizens of different States, therefore the business is interstate commerce.

"A number of quotations from decisions are made to the effect that interstate commerce consists of transactions between 'citizens of different States,' and great emphasis is laid upon this precise language. We think, however, that the decisions do not justify this emphasis, and that no case can be found in which the character of the commerce is made to depend upon the citizenship of the parties or the place of final ratification of the contract. The true test is not the citizenship of the parties, but the essential character of the transaction. In this case counsel seems to be conscious of this doctrine, and so has introduced a new term, and called the transaction an 'interstate contract,' apparently concluding that if the contract be 'interstate' the commerce is interstate. In this connection he says: 'This distinguishes this case from all the other cases that we have been able to find in the supreme and circuit courts, and serves, as we think, to stamp the transactions of the defendant with the characteristic and *indicia* of interstate business, protected by the commerce clause of the Constitution.'

"This is the gist of the contention here, and the defendant's case depends upon the ability to establish this proposition.

"If it be true that because, at some stage of a commercial transaction, it is necessary to have the approval of the seller, who is a citizen of a different State and located in that other State at the time the contract is said to be completed, therefore the transaction is interstate commerce, then a discovery has been made and a new and large class of commercial transactions which are in essential character intrastate commerce will be protected by the commerce clause of the Constitution. The seller of goods by retail may establish his place of business in one State and his residence in another, and by requiring that all transactions shall be subject to his approval in the State of his residence may escape all local license and privilege taxes.

"An ineffectual effort to escape State local taxes by requiring the contract to be approved at the home office seems to have been made by the Singer Sewing Machine Company in Alabama. *Singer Sewing Machine Co.* v. *Brickell,* 233 U. S. 304, 34 Sup. Ct. 493, 58 L. Ed. 974. That case differs from this in some vital particulars, but in that particular it is identical.

"It was said in *Western Union Telegraph Co.* v. *Kansas,* 216 U. S. 26, 30 Sup. Ct. 190, 54 L. Ed. 355: 'We are aware of no decision of this court holding that a State may, by any device or in any way, whether by a license tax, in the form of a "fee" or otherwise, burden the interstate business of a corporation of another State.' We may add to this that we are aware of no decision by the Supreme Court of the United States holding that anybody may, by any device or by any ways or means whatsoever, avoid local license taxes for doing intrastate business contrary to the laws of this State. That this method of transacting business by the Dalton Adding Machine Company is a mere device for the purpose of avoiding the State statutes is apparent when the contention is made that, even in case of a cash transaction, when a machine, previously in the possession of the purchaser, is sold by a local agent to that purchaser for cash, strictly in accordance with the previous instructions given to the local agent, such a transaction needs confirmation by the company at its home office. The price is fixed, the property delivered, the terms complied with, and nothing is left of such a transaction except for the local agent to send the check or the currency to the selling company. Inasmuch as the purchaser has complied with every substantial term of the contract, it is not believed that the selling company could refuse to accept the purchase price, notwithstanding the device referred to. It can only be resorted to in case of such a cash transaction for the purpose of attempting to convert 'into a form resembling interstate commerce that which in its intrinsic substance is local business subject to State control.' A similar effort has

been vainly essayed and condemned by the Supreme Court of the United States. *Browning* v. *City of Waycross,* 233 U. S. 16, 34 Sup. Ct. 578, 58 L. Ed. 828.

"That the citizenship of the parties does not determine the question may be illustrated in this way:

"The seller, a wholesale manufacturer or merchant, may live in the same house with a buyer, a retail merchant doing business on the same street on which their joint residence is located, and the wholesale merchant or manufacturer may, in the State of their joint residence, sell the retailer some of his merchandise then located in an adjoining State, and may be in the habit of having such transactions with the retailer, yet no one can doubt that such business is clearly interstate commerce protected by the commerce clause of the Constitution, although both of the contracting parties live in the same house, and the entire business is transacted in that house.

"While it is true that transactions between citizens of different States are generally transactions of interstate commerce, still this is merely the usual incident, and it must be conceded that it is the character of the transaction, and not the citizenship or the location of the parties, that determines whether it is interstate or intrastate commerce.

"The courts will, therefore, endeavor to ascertain the real character of the transaction.

"That contracts for such sales as we are now considering are Virginia contracts is plainly demonstrated by the fact that the contract is negotiated between an agent of the seller in Virginia and a purchaser in Virginia, for the sale of a machine which is in Virginia, the terms of sale being completed and the contract fully performed in this State. *London Assurance* v. *Campania De Moagens do Marreiro,* 167 U. S. 160, 17 Sup. Ct. 785, 42 L. Ed. 120.

"Here the movement of the machines in interstate commerce has been accomplished. They are at rest in this State, some of

them in the possession of the local agent, some in the possession of persons with whom they have been left for trial, and some are held by persons in this State as lessees. They are mingled with the other property of the State and protected by State law. It seems to be admitted that they are subject to the local property tax.

"The sales of such machines thus in the State, mingled with the other property in the State and subject to local taxation, cannot be distinguished from the sale of any other property thus located in the State. If the mere intention of the seller, a citizen of another State, to sell such machines before having shipped them into this State and his necessary confirmation of such sales stamps such transactions as interstate commerce, then the shield which the Constitution intended for commerce *between* the States will, by a strained and unnatural construction, become a sword for the destruction of commerce *in* the States. Commercial transactions in this State involving the bargain and sale of specific commodities sold in competition with local dealers may escape all State exactions by the mere device of having the nonresident owner ship them into this State and say that (even when they are sold for cash) all sales are subject to his approval outside of the State. It seems to us that the mere statement of the results which would follow if this admittedly new doctrine is established would be so revolutionary as to condemn it as unsound.

"We regard the case of *Kehrer* v. *Stewart*, 197 U. S. 60, 25 Sup. Ct. 403, 49 L. Ed. 663, and *Armour Packing Company* v. *Lacy*, 200 U. S. 226, 26 Sup. Ct. 232, 50 L. Ed. 451, both of which were cases of foreign meat packing houses doing a large interstate business and a small intrastate business by selling a part of their product after the same had been shipped into the States imposing the tax, and the cases cited in the opinions, as decisive of the question here referred to. In these cases the foreign corporations were required to comply with the State laws, because part of the business was intrastate.

The case of *Swift & Co.* v. *United States,* 196 U. S. 398, 25 Sup. Ct. 276, 49 L. Ed. 518, seems to be relied upon by the defendant's counsel. We are unable to apply that decision in any way to the question here involved.

"That was a prosecution by the United States against the beef trust, alleging a great combination and conspiracy in restraint of trade, in violation of the act of July 2, 1890, (26 Stat. at L. 209, chap. 647, U. S. Comp. Stat., 1901, p. 3200), 'To protect trade and commerce against unlawful restraints and monopolies.'

"The defendants in that case were charged with engaging in the business of buying and slaughtering livestock at the stock yards in Chicago, Omaha, St. Joseph, Kansas City, St. Louis and St. Paul; of selling such fresh meats to dealers and consumers in divers States and territories of the United States other than those wherein the cattle were slaughtered, and in the District of Columbia, and distributing the same; that the defendants together controlled about six-tenths of the whole trade and commerce in fresh meats among the States and territories and the District of Columbia; and that but for the unlawful acts charged the defendants would be in free competition with each other; that in order to restrain competition among themselves they agreed to refrain from bidding against each other 'except perfunctorily and without good faith,' and by this means compelled owners of stock to sell at smaller prices than they would receive at the bidding by real competitors; that they combined to bid up the price of livestock for a few days at a time, thereby inducing stock owners in other States to make large shipments to the stock yards to the owners' disadvantage; with attempting to monopolize commerce; to arbitrarily from time to time raise, lower and fix prices, and to maintain uniform prices at which they would sell to dealers throughout the United States; that this was affected by secret periodical meetings, at which prices were maintained directly, and by collusively restricting the meat shipped by the defend-

ants, whenever conducive to the result; and that they had endeavored to control transportation rates by arrangements with the railroads whereby the defendants received rebates, and had their product transported at less than the lawful rates, etc.

"The defendants alleged by way of defense that part of the transactions complained of were strictly intrastate commerce, and hence beyond the control of the Congress. The court, however, overruled this defense upon the ground that acts lawful in themselves were unlawful when combined with other acts as part of an unlawful scheme in restraint of trade, to prevent competition, and to create a monopoly in contravention of the act.

"Mr. Justice Holmes, delivering the opinion of the court, appears to have anticipated that some of his remarks might be misconstrued just as the defendant's counsel has here, in our opinion, misconstrued them, and so takes care to say in this connection: 'But we do not mean to imply that the rule which marks the point at which State taxation or regulation become permissible necessarily is beyond the scope of interference by Congress in cases where such interference is deemed necessary for the protection of commerce among the States. Nor do we mean to intimate that the statute under consideration is limited to that point. Beyond what we have said above, we leave those questions as we find them.'

"From this it seems perfectly apparent that it was not intended by that decision to in any way modify or change any of the established doctrines as to the right of the States to impose reasonable conditions upon foreign corporations desiring to do intrastate business.

"The suggestion that the intrastate business in this case is smaller than the interstate business, or insignificant and incidental, is not decisive. As is well said by the assistant attorney-general in his brief: 'The test to determine whether a foreign corporation transacts such intrastate business as can be reached by State taxation is *whether domestic business is substantial in*

*its* essence, and whether it may reasonably be separated from its interstate commerce; and the question does not depend upon a comparison of its intrastate with its interstate commerce.'

" 'The ratio of profits on the domestic business to the license tax is an immaterial circumstance. If the license fee imposed is general in its operation, and is in other respects invulnerable, the mere fact that some foreign corporation may not be able to make profits enough to meet it, does not render the law unconstitutional as to that corporation. The opportunity to do business, subject to the protection of our laws and with all the advantages which arise from our markets and our financial and other resources is the thing which is made the subject of the excise.'

"*Marconi Wireless Telegraph Co.* v. *Commonwealth,* 218 Mass. 566, 105 N. E. 314; *Baltic Mining Co.* v. *Mass.,* 231 U. S. 68, 34 Sup. Ct. 15, 58 L. Ed. 127.

"We do not think it necessary to undertake to analyze the numerous authorities. The Supreme Court of the United States has dealt with the questions here involved in many cases. These cases are well summarized by Mr. Chief Justice Rugg in the case of *Marconi Wireless Telegraph Co.* v. *Commonwealth, supra.* Other instructive cases are: *Browning* v. *Waycross,* 233 U. S. 16, 34 Sup. Ct. 578, 58 L. Ed. 828; *American Steel & Wire Co.* v. *Speed,* 192 U. S. 508, 24 Sup. Ct. 365, 48 L. Ed. 538.

"We are of the opinion that the facts of this case demonstrate beyond a peradventure that the Dalton Adding Machine Company is doing a substantial part of its buisness in this State in the following particulars:

"(a)  In bringing its machines into this State before selling them, and in maintaining a stock of machines for exhibition and trial, and in selling such machines in this State, after their transportation in interstate commerce has been concluded and they have become mingled with the general mass of property in this State;

"(b)   In renting such machines and collecting rents therefor from its customers in this State at will;

"(c)   In buying and exchanging machines for machines made by other manufacturers, and in selling such machines so received in exchange at will;

"(d)   In employing a mechanic in this State and entering into contracts for repairing of machines owned by persons in this State from time to time and collecting the charges therefor;

"(e)   In keeping on hand in this State certain parts of machines and a stock of paper and ribbons suitable for use upon the machines, which are freely sold from time to time by its agent in Richmond to its customers.

We think it perfectly apparent that in these particulars the business of the company in this State is not 'commerce among the States,' the freedom of which is guaranteed by the United States Constitution, but that such business, in every essential particular, is business which has been transacted by the company in this State in violation of the statutes referred to."

See also the case of *General Railway Signal Co.* v. *Commonwealth, ante,* p. 301, 87 S. E. 598, and authorities therein cited.

The order appealed from is affirmed.

*Affirmed.*