[No. 19520.   Department One.   January 20, 1926.]

DALTON ADDING MACHINE SALES COMPANY, *Appellant,*
v. H. W. LINDQUIST *et al., doing business as Lind-
quist Brothers & Runland, Respondents.*[1]

[1] CORPORATIONS (259) — FOREIGN CORPORATIONS — RIGHT TO SUE—
FAILURE TO PAY LICENSE FEE.  It is a good defense to an action
on contract, brought by a foreign corporation doing business in
this state, that it had not paid its annual license tax under Rem.
Comp. Stat., §§ 3841, 3842, requiring, as a condition precedent
to action, the payment of the license tax by every "foreign cor-
poration having its articles on file in the office of the secretary
of state;" and it is immaterial that it had also failed to "file its
articles," as required by Id., §§ 3852-3854, under penalty of a
named sum, to be recovered in a civil action.

[2] CORPORATIONS (247)—FOREIGN CORPORATIONS—POWER TO REGULATE
—CARRYING ON BUSINESS IN STATE.  A foreign manufacturing
company is "doing business" in this state, within Rem. Comp.
Stat., §§ 3852-3854, where it has an agent in this state authorized
to make sales of machines to whom it ships the machines, in
small lots, and who makes delivery on written contracts in the
form of orders to the company, subject to its approval at the
home office; the business being intrastate, and not interstate,
because the machines are shipped to an agent in this state and
thereafter sold here.

[3] SAME (247).  The fact that the order is taken subject to ap-
proval at the home office of the foreign corporation, does not
make such business interstate business; especially where the
order does not represent the true course of dealing between the
parties.

[4] EVIDENCE (173)—PAROL EVIDENCE TO VARY WRITING—SUBSEQUENT
AGREEMENT—RELATION OF ORAL AGREEMENT TO WRITING.  Proof of
an oral agreement is not inadmissible as varying the terms of
the written contract, where, at the time a written contract was
made for the sale of an adding machine, the agent agreed that
the purchaser might try it for a few days and return it if not
satisfactory, and its return was later agreed upon.

[5] PRINCIPAL AND AGENT (34)—RIGHTS AND LIABILITIES AS TO THIRD
PERSONS—APPARENT AUTHORITY—SALES.  A resident agent au-
thorized to sell and deliver adding machines, shipped to him in

[1]Reported in 242 Pac. 643.

this state, holding himself out as having authority to make contracts with respect to the sale, has apparent authority to make a sale on condition that it be tried out and the sale rescinded if the performance is not satisfactory to the purchaser.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered June 13, 1925, upon findings in favor of defendants, in an action on contract, tried to the court. Affirmed.

*Leopold M. Stern, Clarence L. Gere,* and *John S. Jurey,* for appellant.

*W. E. Heidinger,* for respondents.

FULLERTON, J.—The appellant, a corporation organized under the laws of the state of Ohio, brought this action against the respondents, H. W. and H. R. Lindquist, alleging that they were copartners, doing business under the name of Lindquist Brothers & Runland, to recover a balance claimed to be due as a part of the purchase price of an adding machine sold by it to the partnership. The contract sued upon is in writing, and is set out as an exhibit to the complaint. It is in the form of an order, directing the corporation to deliver to the partnership an adding machine f. o. b. at Enumclaw, Washington, and is made subject to the approval of the corporation. The contract price of the machine was $400, on which there were credited certain sums, the balance being payable in monthly installments. On the back of the contract were printed some nine conditions made "a part of this order," those urged as material to the questions presented by the present controversy being the following:

"(6) This instrument may not be varied by any oral understanding or agreement, contemporaneous or otherwise, all previous negotiations, either oral or written, being hereby abrogated or merged herein; and this printed and written document, when approved by

an executive officer of your company at Cincinnati, Ohio, is to constitute the entire agreement and understanding between the parties hereto.

"(7)  It is expressly agreed that this order shall not be countermanded, that the original hereof has been unconditionally released and delivered for transmission to The Dalton Adding Machine Sales Company, and that any notice or communication relating hereto or contemplated hereby shall be made in writing to said company at Cincinnati, Ohio, and not otherwise.

"(8)  The within signer hereby expressly agrees that all checks will be drawn to the order of The Dalton Adding Machine Sales Company, and consents that credit shall not be given or claimed hereon except and until payment be actually received by you in Cincinnati, Ohio.

"(9)  The within signer has retained an exact duplicate hereof."

The respondents set up three distinct defenses; first, that the appellant had no legal capacity to sue; second, that there was a defect of parties defendant; and, third, that the contract of purchase was, prior to the commencement of the action, rescinded by the mutual agreement of the parties.

The trial was by the court sitting without a jury and resulted in findings sustaining each of the several defenses, and a judgment dismissing the action, with costs to the respondents.

The first of the defenses set out is founded on the statutes prescribing the terms and conditions on which foreign corporations may do business in this state. These statutes, as originally enacted (Rem. Comp. Stat., §§ 3852, 3853, 3854), authorize and empower any corporation incorporated under the laws of any state or territory of the United States, or any foreign country, state or colony, for which domestic corporations are authorized to be so formed under the laws of this state (except as to certain restrictions on alien corporations

with respect to the acquisition of real property), to sue and be sued, and to transact and perform such business within the state as local corporations, organized for like purposes, may transact and perform.   The rights and powers were, however, granted subject to certain conditions to be complied with by the corporation desiring to enter the state for the transaction of business.   It was required to file in the office of a secretary of state a certified copy of its articles of incorporation, and to designate and appoint in writing an agent, who should reside at the principal place of business of the corporation within the state, and who should be authorized to accept service of process in any action or suit pertaining to the property, business or transactions of the corporation within the state in which such corporation may be a party.   The penalty, fixed by the statute (Ib. § 3855) for the doing of business by any such foreign corporation without a compliance with the statute, was a penalty in a named sum of money, to be recovered in a civil action at the suit of the attorney general in the name of the state.

Later on, the legislature enacted another statute with respect to corporations, both foreign and domestic. Laws of 1907, p. 270.   By § 6 of the act it provided:

"Every corporation incorporated under the laws of this state, and every foreign corporation having its articles of incorporation on file in the office of the secretary of state shall, on or before the first day of July of each and every year, pay to the secretary of state, for the use of the state, the following license fees:  .  :  ." [Rem. Comp. Stat., § 3841.]

And by § 7:

"No corporation shall be permitted to commence or maintain any suit, action or proceeding in any court of this state, without alleging and proving that it has paid its annual license fee last due  .  .  ."  [Rem. Comp. Stat., § 3842.]

[1]   There was no compliance by the appellant with either of these statutes, and it was because of the want of such compliance that the trial court held that the appellant had no legal capacity to sue.  The appellant assails this holding upon several distinct grounds, the first of which to be noticed is that the question sought to be raised is not open to the defendants,—that it "is a matter solely and alone between the appellant and the state." With reference to the first of the cited statutes, this court has held that a defendant could not defeat a recovery by a foreign corporation on a liability created by a contract entered into with it, on the ground that the contract arose out of business transacted by the corporation in this state without a compliance with the statutes. *Dearborn Foundry Co. v. Augustine,* 5 Wash. 67, 31 Pac. 327; *Whitman Agricultural Co. v. Strand,* 8 Wash. 647, 36 Pac. 682; *La France Fire Engine Co. v. Mt. Vernon,* 9 Wash. 142, 37 Pac. 287, 38 Pac. 80, 43 Am. St. 827; *Rathbone, Sard & Co. v. Frost,* 9 Wash. 162, 37 Pac. 298; *Marble Savings Bank v. Williams;* 23 Wash. 766, 63 Pac. 511; *Horrell v. California etc. Ass'n,* 40 Wash. 531, 82 Pac. 889. An examination of the cases, however, will show that they are rested on the principle that, where a statute creates a new offense and denounces a penalty, or gives a new right and declares a remedy, the punishment or remedy can be only that which the statute prescribes, and emphasis is laid on the fact that the statute does not declare void a contract made by a foreign corporation doing business in this state without a compliance with the requirements of the statute, or declare that the corporation may not sue on the contract, pointing out that the statute prescribes a specific remedy for the non-compliance, and the specific officer who may enforce the remedy.

But the later statute, it will be observed, is not thus limited.  It not only provides that every corporation,

foreign or domestic, shall pay a license fee to the state, but provides that it shall not be permitted to commence or maintain any action, suit or proceedings in any court of the state without alleging and proving that it has paid such license fee. This change in the statute, we have held, requires a change in the rule, and that, now, a defendant may question the capacity of a foreign corporation to sue, where it does not show a compliance with the statute. In *Frye & Co. v. Merchants' Transportation Co.*, 118 Wash. 602, 204 Pac. 184, the action was by a foreign corporation. In its complaint, the corporation alleged that it was a corporation organized under the laws of the state of Nevada, with its principal place of business in this state at Seattle, and that it had paid the license fees due the state. This latter allegation was denied in the answer, and there was no proof upon the question. The trial court, however, found affirmatively that the license fee had been paid. For the failure of the proofs to substantiate the allegation and finding, we reversed the case and remanded it for a new trial, using this language:

"We long ago held, in *Denver v. Spokane Falls*, 7 Wash. 226, 34 Pac. 926, that the legal capacity of the plaintiff may be raised under the form of general denial, and that, under such denial, plaintiff was put to its proof as to every allegation material to its cause of action. See, also, *Thompson-Spencer Co. v. Thompson*, 61 Wash. 547, 112 Pac. 655, and *Washington Printing Co. v. Osner*, 99 Wash. 537, 169 Pac. 988.

"In the last two cases, no issue had been raised as to the corporate capacity of plaintiff, by the pleadings. In this case, the issue having been raised, and there being a total failure of proof as to the corporate capacity of respondent, it follows that there was a complete failure of proof upon which to base such finding necessary to respondent's recovery."

Another case recognizing the rule is that of *Boston*

*Tow Boat Co. v. Sesnon Co.*, 64 Wash. 375, 116 Pac.
1083. The plaintiff, in that case, was a corporation
organized under the laws of the state of Massachusetts.
The action arose out of a contract of affreightment.
The defendant defended upon the merits, and also set
up the fact that the corporation was doing business
within this state and had not paid its annual license fee
to the state, past due at the time of the commencement
of the action. The trial court held that the action could
not be maintained because of the non-payment of the
license fee, but, in order to settle the whole controversy
and prevent another action at some future time, it
passed upon the merits of the action, determining the
merits in favor of the defendant. This court, on the
appeal, pursued the same course. Upon the question
of the right to maintain the action, this court, speaking
through Judge Dunbar, said:

"Noticing first the respondent's contention that the
appellant had no right to bring an action for the rea-
sons affirmatively alleged in the answer, § 7 of chapter
140 of the Laws of 1907, p. 271 (Rem. & Bal. Code,
§ 3715), is as follows:

" 'No corporation shall be permitted to commence or
maintain any suit, action or proceeding in any court of
this state, without alleging and proving that it has paid
its annual license fee last due.'

"A somewhat lengthy argument has been presented
by the appellant, to the effect that this section, con-
strued in connection with certain other sections of the
statutes, was not intended to apply to a fee of this kind.
But this argument is too refined to receive judicial
recognition, and the statute pleaded by the respondent
is so plain and positive that it would be a wrong to
undertake to construe it out of existence, or to modify
its plain, mandatory terms."

It is possible that the case loses some of its force,
because the court treated the merits of the action as
before it. But it is, nevertheless, an expression of the

court on the question involved. With respect to domestic corporations, we have repeatedly recognized and applied the principle. *Rothchild Bros. v. Mahoney,* 51 Wash. 633, 99 Pac. 1031; *Hawley v. Bonanza Queen Mining Co.,* 61 Wash. 90, 111 Pac. 1073; *Thompson-Spencer Co. v. Thompson,* 61 Wash. 547, 112 Pac. 655; *Pacific Drug Co. v. Hamilton,* 71 Wash. 469, 128 Pac. 1069; *Ransom v. Wickstrom & Co.,* 84 Wash. 419, 146 Pac. 1041, L. R. A. 1916A 588; *Washington Printing Co. v. Osner,* 99 Wash. 537, 169 Pac. 988; *Commercial Bank & Trust Co. v. Wenatchee Park Land & Irrigation Co.,* 106 Wash. 181, 179 Pac. 798; *Erickson v. Perica,* 113 Wash. 510, 194 Pac. 963.

The appellant further urges in this connection that the statute is not applicable to its situation. The statute, it will be noticed, requires a license fee of every domestic corporation, "and every foreign corporation having its articles of incorporation on file in the office of the secretary of state." The appellant did not have its articles of incorporation on file with the secretary of state, and it is upon this fact that the contention of want of applicability of the statute is based. But this was the situation in the case of *Boston Tow Boat Co. v. Sesnon Co.,* above cited. While the opinion in the case does not so disclose, an examination of the record will show that the corporation suing therein had neither filed its articles of incorporation with the secretary of state nor appointed a resident agent, and, if the statute requiring the payment of a license was applicable to its situation in that case, it is applicable to the situation of the appellant in the instant case. But the contention is unsound in principle. Manifestly, had the appellant complied with the statutes with reference to filing its articles of incorporation and appointing a resident agent, it could not maintain an action on any contract arising from business transacted within the

state without the payment of the license fee, and certainly it can have no greater rights because of its refusal to comply with the statutes in this respect. The statute is a legislative declaration of the public policy of the state. Although the declaration is negative in form, it has the effect of positive law. Its purpose is to put all corporations doing business in the state upon an equality. It is to prevent foreign corporations from doing business on more favorable terms than is accorded to domestic corporations. For a foreign corporation to do business within the state without a compliance with the statute is, therefore, a violation of the law. It is a wrong, and no one can be heard to plead his own wrong, to escape a penalty imposed by law.

[2] The third objection under this head is that the appellant was not doing business within the state, but, on the contrary, was doing an interstate commerce business. Its method of transacting business is this: The adding machines in which it deals, it causes to be manufactured from its head office in the state of Ohio. It has an agent for their sale in the state of Washington, who maintains an office at the city of Seattle therein. It ships its machines to this agent, usually in lots of five or six. The agent, acting by himself and through assistants, undertakes to sell them to the trade. They carry them about with them, and, when a prospective customer is found, the machine is exhibited to him and its method of working demonstrated. If the customer concludes to make a purchase, the machine is left with him. A written contract is taken from the purchaser, at the time of the delivery, purporting to order a machine from the appellant, and this whether he pays the purchase price in cash, or buys upon terms, and it is provided in the contract that it is subject to the approval of the appellant at its home office in Ohio. But there seems to be no requirement that the contract be

sent to the company. The agent, when questioned as to his authority to take back machines sold under contract, testified: "We [meaning himself and his assistants] could service all machines—that is all. I will say this: Before the order goes in to the company, if it comes to my desk and they haven't received it or anything, I can do anything I want to. I could tear it up, but if it goes into the company irregularly, it is out of my hands."

It is our conclusion that the appellant was doing business within the state. It is not to be denied, of course, that a foreign corporation, engaged in the manufacture and sale of articles of commerce, may send its soliciting agents into the state for the purpose of taking orders for its products, and may ship such products to persons giving, or to the agent taking, the orders for delivery to the persons giving them, without a compliance with the state laws relative to the doing of business within the state by a foreign corporation. This is an interstate commerce business, protected by the commerce clause of the federal constitution, and the state can impose no condition or burden whatsoever upon such business. But the appellant's business is not of this character. It ships no goods upon the orders taken by its agents. On the contrary, it ships its machines to its agents before any such orders are taken, for the purpose of having them sold by its agents, and the agents sell them, from the general stock so shipped, to whomsoever can be persuaded to buy them. Before any sale is attempted, the machines are within the state. They have come to a state of rest, and are a part of the general property within the state, protected by the laws of the state, and subject to the same condition with respect to their disposition as like property generally within the state is subjected. That a business so conducted is intrastate business, rather than interstate

commerce business, is held by the authoritative court. In *Sonneborn Bros. v. Cureton*, 262 U. S. 506, the question was whether oil transported by the appellants from the state of New York to their warehouse in the state of Texas and there held for sale in the original packages of transportation, and so subsequently sold and delivered, could be made the basis of an occupation tax upon the appellants by the state of Texas. The court held that such a tax could be imposed, using, in the course of the discussion, this language:

"Our conclusion must depend on the answer to the question: Is this a regulation of, or a burden upon, interstate commerce? We think it is neither. The oil had come to a state of rest in the warehouse of the appellants and had become a part of their stock with which they proposed to do business as wholesale dealers in the state. The interstate transportation was at an end, and whether in the original packages or not, a state tax upon the oil as property or upon its sale in the state, if the state law levied the same tax on all oil or all sales of it, without regard to origin, would be neither a regulation nor a burden of the interstate commerce of which this oil had been the subject.

"This has been established so far as property taxes on the merchandise are concerned by a formidable line of authorities. *Brown v. Houston*, 114 U. S. 622; *Coe v. Errol*, 116 U. S. 517; *Pittsburg & Southern Coal Co. v. Bates*, 156 U. S. 577; *Diamond Match Co. v. Ontonagon*, 188 U. S. 82; *American Steel & Wire Co. v. Speed*, 192 U. S. 500, 520; *General Oil Co. v. Crain*, 209 U. S. 211; *Bacon v. Illinois*, 227 U. S. 504."

Another case is that of *Dalton Adding Machine Co. v. Commonwealth of Virginia*, 118 Va. 563, 88 S. E. 167, affirmed by the supreme court of the United States in *Dalton Adding Machine Co. v. Commonwealth of Virginia*, 246 U. S. 498. In that case, it appeared that the plaintiff, an Ohio corporation, was selling adding machines in the state of Virginia, in much

13—137 WASH.

the same manner that the appellant is selling them within this state. It brought the machines into the state before they were sold, maintained a stock of machines for exhibition and trial, and sold them through agents, after transportation in interstate commerce had been concluded. The statute of Virginia required all foreign corporations doing business in that state to procure a license and pay a license fee as a prerequisite to the doing of such business. It further provided that any foreign corporation, which should transact business in the state without procuring such license, should be subject to a fine to be imposed by the state corporation commission. The plaintiff did not procure such a license or pay the fee, and the commission named, conceiving that it was doing business in the state in violation of the statute, imposed a fine upon it of $1,000. The action was by the corporation to relieve itself from the fine imposed, contending that its business was that of interstate commerce, rather than intrastate. The court denied the contention, and sustained the imposition of the fine.

What constitutes doing business within the state by a foreign corporation has frequently received consideration by this court. The cases, however, for the greater part, have no direct bearing upon the question here presented, because of the differences in their facts, and it would serve no useful purpose to review them. Perhaps, the ones more directly bearing on the question are the following: *Spokane Merchants' Ass'n v. Clere Clothing Co.*, 84 Wash. 616, 147 Pac. 414; *Grams v. Idaho National Harvester Co.*, 105 Wash. 602, 178 Pac. 815.

[3] But, because an order is taken for the machine at the time of the sale which is subject to the approval of appellant at its home office, it is argued that there is no sale by the agent, but that it is a sale direct between

the appellant and the purchaser, and that the trans-
action thus falls under the protection of the interstate
commerce rule.   But to this there are several answers.
The order did not represent the true course of the
dealing between the parties, and we fear that it was
largely a subterfuge.   While it purports to be an order
for a future delivery, no such action is contemplated by
either of the parties.   There is an actual delivery in
every instance at the time of the sale, and, when the
sale is for cash, we think it can be reasonably doubted
whether the appellant would afterwards be heard to
say that the contract of sale was not executed.   Again,
the power of the agent over the contracts after their
execution—his power to tear them up, or send them to
the appellant, as he pleases—shows that the contract is
one of form rather than one of substance.   Again, to
quote from the opinion of the court in *Dalton Adding
Machine Co. v. Commonwealth, ubi supra:*

"If it be true that because, at some stage of a com-
mercial transaction, it is necessary to have the ap-
proval of the seller, who is a citizen of a different state
and located in that other state at the time the contract
is said to be completed, therefore the transaction is
interstate commerce, then a discovery has been made
and a new and large class of commercial transactions
which are in essential character intrastate commerce
will be protected by the commerce clause of the Con-
stitution.   The seller of goods by retail may establish
his place of business in one state and his residence in
another, and by requiring that all transactions shall be
subject to his approval in the state of his residence
may escape all local license and privilege taxes."

Again, our understanding of the authorities is that
a contract of sale negotiated within the state, between
an agent of the seller and a resident of the state, re-
lating to property within the state, is an intrastate and
not an interstate contract; and, especially so, where

the property sold is delivered from a stock which the seller had theretofore shipped into the state to the agent for the purposes of sale, and that its character in this respect is not affected by the fact that the seller, a foreign corporation, reserves the right to approve the contract at its home office. *American Can Co. v. Grassi Contracting Co.,* 120 Misc. Rep. 230, 168 N. Y. Supp. 689; *Vermont Farm Mach. Co. v. Hall,* 80 Ore. 308, 156 Pac. 1073; *Browning v. Waycross,* 233 U. S. 16; *Singer Sewing Machine Co. v. Brickell,* 233 U. S. 304.

The second ground upon which the court rested its conclusion, we think we need not discuss. At best it serves only to abate the present action, and is not *res judicata* of another action upon the same action. It presents a question of practice merely, the determina- tion of which would serve no useful purpose as a precedent.

[4] The third ground presents these circumstances: At the time the machine was delivered and the contract of sale executed, the purchasers had not tried out the machine, and were uncertain whether it would be useful for their purposes. In view of this situation, the agent agreed that they might try it for a few days, and, if the trial did not demonstrate its usefulness, they could return the machine to the agent, when the part of the purchase price paid would be refunded. The pur- chasers then possessed an adding machine purchased from the same sellers, but desired the new one, because it had some additional devices which they thought would be useful in their business. They tried the ma- chine for several days, but found that it would not answer the purposes for which they purchased it. The agent again appeared at their place of business at about that time, and was told that the machine would not perform the desired service. The agent told them

to store it for a few days, as he had another place where he could place it, and that when he did so he would call for it. The appellant stored it as requested, when another agent appeared, to whom they told the circumstances and told him further that they did not want longer to be held for its safe-keeping. This agent then directed them to deliver the machine to the general office at Seattle. This they did by delivering it at that place to the agent who negotiated the original sale.

The trial court held this to be a rescission of the contract, but appellant contends that it erred in so doing, for two reasons; first, because the contract of sale is in writing, and to permit proofs of the facts shown is to vary the terms of the writing; and second, because the contract, by its terms, provides that it cannot be varied by the subsequent contract of an agent. But we cannot think the court erred for either of the reasons stated. Were the respondents defending on some executory parol agreement, the court could well say that the agreement was merged in the writing. Such, however, are not the proofs. The proofs are of an executed parol agreement. The subsequent performance was a ratification of the original parol agreement and a recognition of its binding effect, and any objection that might have been urged against it, were it still executory, is ineffective, because of the subsequent ratification.

[5] The second part of the objection is founded upon the clauses of the contract we have hereinbefore quoted. But we find nothing in these, which prohibits the agents from entering into new contracts with reference to property once sold. That the appellant may personally make such new contracts is not to be doubted, nor is it to be doubted that it may make them through an agent. The question is, then,

did the agent have authority to make the contract set out? The proofs are, in so far as they go, that they had no such actual authority, but we think it clear that they had apparent authority. They had the machines in possession, were authorized to sell them, and held themselves out as having authority to make contracts with respect to their sale. The respondents were without knowledge as to any limitation upon this authority, and it must follow that any contract they made within its apparent scope is binding upon the appellant. We think it need not be argued that the authority to sell and make contracts with reference to the conditions of the sale, carries with it implied authority to annex, as such a condition, an agreement that the sale may be rescinded, if the thing sold will not perform the functions it was intended by both parties that it should perform.

The judgment is affirmed.

TOLMAN, C. J., ASKREN, HOLCOMB, and MAIN, JJ., concur.