**John SCHERBENSKE, Plaintiff and Respondent,**

v.

**R. A. MAIER, Gust Noack, and Minnie Maier, Administratrix of the Estate of Charles Maier, Deceased, substituted for defendant, Charles Maier, doing business as Maier Chemical Spray, Defendants and Appellants.**

No. 7486.

Supreme Court of North Dakota.

Aug. 27, 1955.

Wm. L. Paulson, Valley City, and Philip L. Scherer, Winthrop, Minn., for appellants.

Roy A. Ployhar, Valley City, for respondent.

GRIMSON, Judge.

The plaintiff in his complaint alleges that he is a sole trader doing business as "Scherbenske's Store" at Tuttle, North Dakota, and that the defendants were "associated together" and doing business under the firm name and style of "Maier Chemical Spray"

of Valley City, North Dakota; that on the 8th day of November 1946, plaintiff and defendants entered into an agreement by the terms of which defendants sold and delivered to plaintiff 1,250 gallons of Maier Chemical Spray at $2 per gallon, total cost, $2,500, on which plaintiff was allowed a credit of $125 leaving a balance due of $2,375 for which plaintiff paid the defendants in cash. Plaintiff further alleges that as a part of that agreement the defendants, and each of them, agreed to and with the plaintiff that they would help sell such spray before July 1, 1947, and that in the event that any spray remained unsold at that date they would take that amount back and refund the purchase price at $2 per gallon; that the defendants have failed and refused to comply with their agreement, failed to sell or take back any of such spray, all of which plaintiff still has in his possession. Wherefore, plaintiff demands judgment against the defendants and each of them for $2,375, together with costs.

The defendants specifically deny that they were ever associated together and doing business as "Maier Chemical Spray" and allege that Charles Maier was the sole owner of said business and make a general denial of all other allegations of the complaint. The case was tried to a jury.

When the plaintiff rested defendants moved for a dismissal of the plaintiff's claim for the failure of proof of the agency, the authority to make the contract and reliance thereon by plaintiff and no showing of damages, which was denied. Defendants then rested without submitting any proof, after which defendants made a motion for a directed verdict upon the same grounds which was denied. The jury returned a verdict for the plaintiff of $2,375 and interest against the defendants. Defendants duly made a motion for judgment notwithstanding the verdict or for a new trial which motion was denied. Defendant, Minnie Maier, Administratrix, appeals from the order denying that motion. The other defendants do not appeal.

The appellant filed numerous specifications of error. As to the lack of evidence the specifications are mainly that the evidence shows no agency or agreement binding the administratrix, Minnie Maier. There also are assignments of error with regard to the admission of evidence and the charge of the court. In the briefs and on argument these specifications are not particularly argued and appellants state the issues to be:

"1. Were the defendants, Gust Noack and R. A. Maier, agents of the defendant, Charles Maier (Minnie Maier, Administratrix of the Estate of Charles Maier, decedent, now substituted in his place and stead as one of the defendants)?

"2. Did the defendants, Gust Noack and R. A. Maier have express or implied authority as agents to make a contract in behalf of the principal to repurchase the goods sold by them to the plaintiff."

We have carefully considered the specifications set out and have concluded there is no prejudice shown in the rulings or charge of the court.

The undisputed, admissible testimony of the plaintiff shows that Charles Maier was the sole distributor of the Maier Chemical Spray and that he had associated with him as salesmen his son, R. A. Maier and his son-in-law, Gust Noack. Charles Maier died after this action was commenced and Minnie Maier, the administratrix of his estate, was substituted in his place.

In November 1944, the defendants, Charles Maier and Gust Noack came to the plaintiff's place of business, introduced themselves and proceeded to sell some of this spray to the plaintiff. The plaintiff himself was correctly allowed to testify only to the conversation with Noack as to what the agreement was since Maier was dead but those conversations were in Maier's presence. Furthermore, two other witnesses who were present at the time of the conversation testified to what Charles Maier himself had said. All these witnesses testify that Charles Maier and Gust Noack had said the spray was fully guar-

anteed and that they would help sell it and if it didn't sell they would be glad to take it back. Plaintiff thereupon wrote out a check to "Maier Chemical Company" for $63 which was endorsed, "Maier Chemical Spray, Charles Maier, Prop.," and cashed. Some, but not all, of this spray was sold by the plaintiff. There also seems to have been a $1,400 deal for spray and machinery between them which is not included in this lawsuit.

Then in November 1946, Gust Noack and R. A. Maier, came to plaintiffs place of business and said they were sent out there to see plaintiff about the 1944 purchase of spray and to try to sell him some more. They reported that Charles Maier would like to have come out but couldn't because of being old and feeble. Plaintiff testified that they said Charles Maier sent his regards and that any deal they made with the plaintiff would be agreeable with him. According to plaintiff's testimony Maier and Noack said they would sell the balance of the 1944 batch for him and also what he would now buy; that they were going to make a distributing point out of plaintiff's place for the surrounding territory. Plaintiff quotes R. A. Maier as saying: "If it don't sell we will get it back and give you back every cent" and that Noack said, "It is guaranteed in every way that if it don't sell, if we don't move it for you, we will take it back and give you your money back." The plaintiff thereupon signed an order for the 2,500 gallons of the spray. He was allowed credit on "the last sale" of $125, leaving a balance of $2,375 for which he gave a check to Maier Chemical Spray for $2,375 which was endorsed by Maier Chemical Spray and cashed. At that time it was also planned that the defendants should conduct experiments in the neighborhood and the plaintiff's brother was engaged to go on with that work. This conversation was verified by four witnesses who were present and heard the conversation by the parties. Later the plaintiff wrote to Charles Maier but received no answer.

Another independent witness, Joe Gertz, testified that Charles Maier and Gust No-ack, his son-in-law, sold him some spray in 1938 and that in 1946 or 1947 Charles Maier came to his place and introduced his son, R. A. Maier, and his son-in-law, Gust Noack, and said that they "were his salesmen out there." On Nov. 12, 1946 Gertz bought $3,500 worth of spray from R. A. Maier and Gust Noack.

The defendants did not take the witness stand so that all these conversations stand undisputed.

The appellant raises the question of whether Gust Noack and R. A. Maier were agents of the defendant, Charles Maier. Charles Maier participated with Noack in the 1944 deal. Together they made a sale to Joe Gertz in 1938. In 1946 Charles Maier told Joe Gertz that R. A. Maier and Gust Noack were his salesmen, after which they sold more spray to Gertz. Then there are the circumstances of Maier and Noack having the spray for delivery and of receiving the checks in payment which were afterwards endorsed and cashed by the Maier Chemical Spray.

Section 3-0103, NDRC 1943, defines actual and ostensible agency as follows:

"An agency is either actual or ostensible. It is actual when the agent really is employed by the principal. It is ostensible when the principal intentionally or by want of ordinary care causes a third person to believe another to be his agent, who really is not employed by him."

Of this section in Bernard v. Madsen, 52 N.D. 822, 204 N.W. 196, 200, this Court says:

"Section 6324, C.L.1913 (Now Sec. 3-0103, NDRC 1943), is but a statement of a well established principle of the common law, which, it has been declared, lies at the foundation of the law of agency. Under this statute an ostensible agency exists where the conduct of the supposed agent is consistent with the existence of an agency, and where, in the transaction in issue, the party with whom the supposed agent

dealt was justified in assuming that the agency existed. It would seem that the essential features of authority, within the purview of this section, are that the third party must have believed in the existence of the authority in the supposed agent, and such belief must rest upon some act or statement of the principal sought to be bound by the alleged authority. There must have been some conduct on the part of the principal reasonably resulting in the belief, in the mind of the third party, that an agency existed together with a reliance thereon."

"Whether an agency has in fact been created is to be determined by the relation of the parties as they exist under their agreement or acts. If relations exist which would constitute an agency it would be an agency whether the parties understood the exact nature of the relation herein." 2 Am. Jur., Agency, Section 24, p. 26.

As proof of Agency, "circumstances, such as the relation of the parties to each other and the conduct with reference to the subject matter of the contract may be relied upon. It is also permissible to prove a previous course in dealing." 2 Am.Jur., Agency, Sec. 443, p. 351.

■ In the case at bar the conduct of Charles Maier in the 1944 transaction supports the ostensible agency of Noack and Maier in the 1946 transaction and lends strength to reliance of the plaintiff upon their statements. There is sufficient evidence to warrant the jury in finding that Noack and R. A. Maier were associated with Charles Maier as his agents in the sale of the spray.

The next question raised by appellant is whether the defendants, Gust Noack and R. A. Maier, had express or ostensible authority to make a contract in behalf of Charles Maier to repurchase the goods sold by them to the plaintiff.

Section 3–0202, NDRC 1943, defines actual or ostensible authority of an agent as follows:

"An agent has such authority as the principal actually or ostensibly confers upon him. Actual authority is such as a principal intentionally confers upon the agent or intentionally or by want of ordinary care allows the agent to believe himself to possess. Ostensible authority is such as the principal intentionally or by want of ordinary care causes or allows a third person to believe the agent to possess."

■ The evidence shows that Charles Maier himself together with Gust Noack made the agreement with plaintiff in 1944 that if all the spray was not sold "they would be glad to take it back." Clearly that act of Charles Maier indicated that that was the manner in which they were making sales. When in 1946 Gust Noack and R. A. Maier made a similar agreement with plaintiff, Charles Maier's action in making the first agreement would naturally lead plaintiff to believe that they had authority to make the same agreement.

"Whenever a principal has placed an agent in such a situation that a person of ordinary prudence conversant with business usages and the nature of the particular business is justified in assuming that such agent is authorized to perform in behalf of his principal the particular act. * * *" 21 R.C.L. 856.

"Although general statements in opinions on the question under annotation must be taken in connection with the particular facts involved, there is considerable authority to the effect that, in the absence of anything to charge the buyer with notice to the contrary, a salesman has implied or apparent authority to bind the principal by an agreement contemporaneous with the sale, that the goods, or part of them, may be returned within a reasonable time if found unsatisfacto-

ry, or at least if they are defective or unsuited for the purpose for which they are purchased." 55 A.L.R. 381. See also 2 Am.Jur., Agency, Sec. 124, p. 101; Wisconsin Lumber Company v. Greene & W. Telephone Co., 127 Iowa 350, 101 N.W. 742, 69 L.R.A. 968, 109 Am.St.Rep. 387; Marion Mfg. Co. v. Harding, 155 Ind. 648, 58 N.E. 194; Dalton Adding Mach. Sales Co. v. Lindquist, 137 Wash. 375, 242 P. 643; George De Witt Shoe Co. v. Adkins, 83 W.Va. 267, 98 S.E. 209; Deering v. Thom, 29 Minn. 120, 12 N.W. 350; Oster v. Mickley, 35 Minn. 245, 28 N.W. 710; Warder, Bushnell & Glessner Co. v. Pischer, 110 Wis. 363, 85 N.W. 968.

There is nothing in the evidence to charge the plaintiff with notice that the defendants did not have authority to make the same kind of an agreement as Charles Maier and Gust Noack made in 1944. Furthermore, there is nothing in the evidence to dispute testimony of the plaintiff regarding the agency and authority of Noack and Maier to make the agreement on which the suit is brought.

The defendants, Gust Noack and R. A. Maier were duly served in this case. The answer is general for all the defendants. The testimony of the plaintiff is largely based on what those two men said concerning the agreement made. They did not testify in contradiction to that testimony or at all. The result is that the testimony of the plaintiff and his witnesses is undisputed and the terms of the agreement plaintiff made with Noack and Maier must be found from that testimony.

In New York Life Ins. Co. v. Hansen, 71 N.D. 383, 400, 2 N.W.2d 163, 171, Judge Christianson, in a special concurring opinion writes:

"Omission to call or interrogate an available witness, especially if the witness possesses peculiar knowledge, and would naturally be friendly to the party's contention, 'raises a strong presumption that the testimony, if elicited, would be unfavorable' to the party who fails to call or interrogate such witness. 22 C.J. p. 115 et seq.; 1 Jones Commentaries on Evidence, 2nd Ed., p. 156; 9 Ency. of Evidence, p. 965 et seq., 20 Am.Jur. p. 192.

"'The scope of the rule is illustrated by the fact that it applies even to failure to combat adverse inferences. Where evidence has been introduced affording legitimate inferences going to establish the ultimate fact that the evidence is designed to prove, and the party to be affected by the proof, with an opportunity to do so, fails to deny or explain such facts, they may well be taken as admitted with all the effect afforded by the inferences.'" 1 Jones, Commentaries on Evidence, 2nd Ed. pp. 156, 157.

In M & M Securities Co. v. Dirnberger, 190 Minn. 57, 250 N.W. 801, the court held:

"When a party fails to produce an available witness who has knowledge of the facts and whose testimony presumably would be favorable to him, and fails to account for his absence, the jury may indulge a presumption or draw an inference unfavorable to such party."

In the case at bar the defendants, Gust Noack and R. A. Maier were the parties alleged by the plaintiff to have made this special contract for the Maier Chemical Spray. They best knew the terms thereof. The defendants never offered their testimony to dispute the testimony of the plaintiff on that matter. Plaintiff tried to call them for cross examination but they were not in the courtroom. No offer was made to produce them or to explain their absence. The jury had a right to take their failure in that respect into consideration and to conclude that the plaintiff's testimony thereon was correct.

As Mr. Justice Butler said in Mammoth Oil Co. v. United States, 275 U.S. 13, 51, 48 S.Ct. 1, 9, 72 L.Ed. 137, 151, quoting Lord Mansfield in Blatch v. Archer, cowp. pt.

pp. 63, 65, 98 Reprint, 968, "All evidence is to be weighed according to the proof which it was in the power of one side to have produced, and in the power of the other to have contradicted."

The trial court in its memorandum decision said:

"The question of agency was raised by the defendants in their brief, and the court * * * is of the opinion that the question of agency can be proved by circumstances as well as direct statements. Both of these elements are contained in the evidence, which showed that Charles Maier had, in the presence of other people not interested in this lawsuit, stated that these men were representing him. And that he had also stated in the presence of others that he would guarantee the product and accept back any and all unsold merchandise. This was not disputed in any way in this case."

We agree with the trial court. The order appealed from is affirmed.

BURKE, C. J., and JOHNSON, SATHRE and MORRIS, JJ., concur.