[No. 12473.    Department One.    April 17, 1915.]

FLORENCE-RAE COPPER COMPANY, *Appellant*, v.
ROY J. KIMBEL, *Respondent*.[1]

MINES AND MINERALS—RELOCATION—NOTICES. Under Rem. & Bal. Code, § 7365, providing that upon "the relocation of forfeited or abandoned quartz or lode claims, . . . a new location monument shall be erected and the location certificate shall state if the whole or any part of the new location is located as abandoned property," the relocation notice posted upon a claim alleged to be forfeited is invalid where it fails to state that it is located in whole or in part upon forfeited or abandoned ground; the term "abandoned" in the latter part of the act being used synonymously and interchangeably with the terms "forfeited or abandoned" as used in the first part of the act; and it is not sufficient that the certificate to be recorded under § 7358 states the fact as to abandonment.

MINES AND MINERALS—ASSESSMENT WORK—RELOCATION—RIGHT TO. A relocation of a group of mining claims, on the theory that they had been abandoned or forfeited because assessment work for

[1]Reported in 147 Pac. 881.

the prior year had not been done on the claims, is invalid, where, prior to the filing of the relocation notice, the original holder had resumed operations by building and improving trails and roads for the better development of the mine, and was furnishing and moving donkey engines and other material for the purpose of facilitating mining operations for which expenditures had been made in excess of the sums required for assessment work on the claims, although said expenses incurred were not within the boundaries of its claims, and would also inure to the benefit of a railroad project in connection with the mines.

Mines and Minerals—Mining Claims—Forfeiture. Under U. S. Rev. Stat., § 2324, providing that, upon failure to do annual assessment work, a mining claim shall be open to relocation, provided the original locators, or successors in interest, have not resumed work upon the claim after failure and before such relocation, a forfeiture does not ensue from the mere failure to comply with the law, but resumption of work at any time prior to the lawful inception of an intervening right would prevent forfeiture, and a forfeiture will not be declared except on clear and convincing proof with every reasonable doubt resolved against a forfeiture.

Appeal from a judgment of the superior court for Snohomish county, Bell, J., entered April 27, 1914, upon findings in favor of the defendant, dismissing an action for an injunction, tried to the court. Reversed.

*Howard Hathaway, E. H. Guie,* and *Eugene H. Beebe,* for appellant.

*Coleman & Fogarty,* for respondent.

Holcomb, J.—Appellant is a mining corporation claiming the right to possession of eighteen located mining claims in the Sultan Mining District, in Snohomish county, Washington, having acquired same by location and by purchase from other locators during the years 1910 and 1911. The claims have never gone to patent, but are held and operated under the general mining laws of the United States and of this state, requiring annual assessment work to be done on each claim or upon one claim for the entire group. The claims in issue were held and operated as a group. The president and most active stockholder of the appellant was one Nicholas Rude-

beck. The secretary and treasurer was one O. T. Brackett. Other stockholders and employees working for the corporation were E. A. Fengler, William Stotroen, Frank Curtis, and five or six others, all of whom came from Dubuque, Iowa, to assist in the operation of the mine. The claims were in a mountainous region very difficult of access, and one of the most important matters to be considered in connection with their development was that of access and of transportation for their output. A railway company, called the Florence-Rae Railway Company, was therefore projected by some of the stockholders, for the purpose apparently of cooperating with the Florence-Rae Copper Company, to build about twenty-five miles of railway from the town of Startup to the group of claims. Mr. Brackett was also secretary of this company.

On April 4, 1913, the respondent, Kimbel, entered into a contract at Dubuque, Iowa, signed by himself and Mr. Rudebeck, on behalf of the railway company and the copper company, whereby Kimbel agreed to subscribe for stock in both companies and be employed as a laborer for them at the agreed price of fifty cents per hour, out of which his board was to be retained at the rate of one dollar per day, and seventy-five per cent of the remainder of his wages was to be applied upon the purchase of stock of the par value of the stock in each of the companies, to wit, Florence-Rae Copper Company, the Florence-Rae Railway Company, and another company which seems to have been projected called the Florence-Rae Lumber & Development Company. On June 23, 1913, respondent arrived at Startup, Washington, and about two days later he went to the group of mining claims and there went to work, under the direction of E. A. Fengler, in assisting to move and place two donkey engines. On July 14, 1913, the respondent posted notices of location upon eleven mining location claims, all of which were over eleven claims of the appellant. The appellant was informed of this on about July 21, 1913. The appellant thereupon ordered

him off the claims as a trespasser. Shortly afterwards he brought an engineer upon the claims for the purpose of surveying and staking the same. Thereupon he was arrested at the instance of appellant upon a criminal charge of trespass, which prosecution was afterwards dismissed, and simultaneously with the dismissal thereof this action was brought by appellant to restrain respondent from trespassing upon said claims and from interfering with the possession and operation thereof. An emergency restraining order was granted, which remained in force during the pendency of the action and until dismissed with the dismissal of the action by the court below in April, 1914.

The respondent answered appellant's complaint, denying trespass, denying the commission of any unlawful acts by him, and setting up two affirmative defenses, in the first of which he alleged that the appellant had failed to perform the assessment work required by the laws of Washington and of the United States, upon the mining claims described and mentioned in appellant's complaint, for the years 1911 and 1912, and that on the 14th day of July he entered upon said claims and relocated the same; that he was prevented from perfecting his locations by the arrest heretofore mentioned, and by the restraining order preventing him from going upon the same. He alleged, as a second affirmative defense, that the boundaries of the mining claims mentioned and described in appellant's complaint were never properly staked or marked upon the ground by appellant prior to the 5th day of August, 1913, and that prior to said date it was impossible for any person to tell from any marks placed upon the grounds what property was intended by the appellant to be included within the boundaries of said mining claims. Wherefore respondent prayed that the action be dismissed and that he be adjudged the owner of said mining claims. The new matter set forth in the affirmative defenses was denied by the appellant's reply. Trial was had before the court in November, 1913.

At the trial the appellant introduced evidence of its in-
corporation and license for the current year, and its notices
of location of the mines in question. It also introduced evi-
dence of the interference with its possession by respondent
on July 21, 1913, and on July 25, 1913. The appellant then
rested, and respondent moved for a nonsuit, which was de-
nied. Respondent then introduced testimony tending to show,
that the assessment work that should have been done by the
appellant upon the group of mining claims in 1912 had not
been done; that work of the value of not to exceed $550 only
had been done upon all of said claims. He also introduced
evidence, over the objection of appellant, to the effect that
appellant had not marked the boundaries of its claims upon
the ground as required by law; but the court, at the instance
of the appellant, required the respondent to elect as between
its first and second affirmative defenses, upon the ground that
the second affirmative defense was inconsistent with the first,
inasmuch as an attempt to relocate mining claims on the
ground of abandonment or forfeiture necessarily recognized
the fact that there had been a previous valid location and
that the attempt to prove that the appellant had not properly
located its claims and did not have valid locations to sustain
its possessory right was inconsistent therewith. To this re-
quirement to elect, respondent objected and excepted, and
elected to stand upon his first affirmative defense—that the
assessment work had not been done by appellant and that
the claims were forfeited and subject to relocation. The re-
spondent also introduced evidence of his location notices upon
eleven mining claims conflicting with eleven of appellant's
claims. He, assisted by Fengler, Curtis, and Stotroen, re-
located the eleven claims in one day. All of respondent's loca-
tions were named Iowa Lode No. 1, and so on to Iowa Lode
No. 11, inclusive.

In rebuttal appellant attempted to show, by the respondent
and other witnesses, that the respondent located these claims
fraudulently and under a fraudulent agreement and collusion

with Fengler, Curtis, and others who were stockholders in the
Florence-Rae Copper Company.    This respondent denied,
and he testified that he relocated the claims for himself.    In
rebuttal, also, the appellant introduced evidence to show that
all its claims were marked upon the ground by monuments,
and by marking the boundaries as well as the nature of the
surface would permit.    It also introduced evidence to show
that, on May 26, 1913, it had resumed its assessment work
by the purchase of donkey engines, and by commencing to
move them to the mining locations or their vicinity for the
purpose of operating an aerial tram and other conveyances
for the removal of ore from the mines, and material and sup-
plies to the mines, and that in connection therewith the ap-
pellant caused a large amount of work to be done in building
trails and improving roads and trails for ingress and egress
to and from the mining locations; that said work was con-
tinuous up to the time of the attempted relocation by respond-
ent, and that, in addition thereto, and on the 21st day of
July, 1913, the appellant caused actual work to be begun
upon certain of the mining claims.    Appellant, also in re-
buttal, introduced evidence to show that its assessment work
for the year 1912 had been wholly done by the labor upon
building trails, bridge building, grading, slashing, building
cabins and repairing a cabin that was upon the group, and
furnishing material for the development of the mine, aggre-
gating the sum of $2,800, or about $1,000 in excess of what
was required to do the assessment work for the entire group
for one year.

The court found, among other things, that the appellant
failed to perform the necessary assessment work upon said
group of claims for the year 1912; that the fair and reason-
able value of all the work so performed was and is the sum
of $1,000, and no more; that said mining claims, by reason
of the failure to perform said necessary assessment work,
became subject to relocation on the 1st day of January next
following, to wit, 1913; that on July 14, 1913, while said lo-

cations were subject to relocation and before the plaintiff had resumed work on said claims, and while said claims were vacant and unoccupied and not in the possession of any person whatsoever, the defendant peaceably entered thereon and posted at the point of discovery notices of location as hereinbefore mentioned; that the respondent was, on said 14th day of July, 1913, a native-born citizen of the United States and over the age of twenty-one years; from which the court concluded that the action should be dismissed at plaintiff's cost. A decree in accordance therewith was thereupon entered.

The contentions of appellant are as follows: (1) That there never was a valid relocation of the claims by respondent; (2) that, even if the assessment work had not been performed in 1912, there was a resumption of work by appellant in May, 1913, which resumed work continued from that date until after the alleged relocation by respondent in July; (3) that the alleged relocation was made by respondent in collusion with E. A. Fengler, a manager and stockholder of the appellant company, and F. M. Curtis, another stockholder of the appellant, in order to defeat the title of the corporation to its mining claims, and to secure to themselves advantages flowing from a breach of their trust obligations to the corporation and other stockholders; (4) that the assessment work for the year 1912 had been fully performed by the appellant.

I.   We are inclined to think that the first contention of appellant, that the relocation notice was not sufficient, is ruled by the case of *National Milling & Mining Co. v. Piccolo*, 54 Wash. 617, 104 Pac. 128. The statute, Rem. & Bal. Code, § 7365, is as follows:

"The relocation of forfeited or abandoned quartz or lode claims shall only be made by sinking a new discovery shaft and finding new boundaries in the same manner and to the same extent as is required in making a new location, or the relocator may sink the original discovery shaft ten feet deeper than it was at the date of the commencement of such relocation, and shall erect new, or make the old monuments the

same as originally required; in either case a new location monument shall be erected and the location certificate shall state if the whole or any part of the new location is located as abandoned property."

That portion of the statute referring to the sinking of the shaft does not apply to mining claims west of the summit of the Cascade Mountains, under a further provision of the act. The location certificates of respondent do not state that the claims were relocated as forfeited or abandoned property. The conclusion of the lower court was that, inasmuch as the word "forfeited" is not contained in that part of the statute reciting that the location certificate shall state whether the whole or any part of the new location is located as "abandoned property," the act applies only to abandoned property, and does not require a relocator to state in the *posted notice* that he relocated the mining property as *forfeited claims*. It seems plain to us, however, that the words "abandoned" and "forfeited" in the act are used synonymously and interchangeably, and that the word "abandoned," in the latter part of the act, includes or means in the alternative "forfeited" as used in the first part of the act. This was the construction given to an almost identical act by the supreme court of Arizona upon an Arizona statute, and approved by the supreme court of the United States in *Clason v. Matko*, 223 U. S. 646. In *National Milling & Mining Co. v. Piccolo, supra*, this court said:

"The appellant, it will be remembered, was attempting to relocate a forfeited claim, not a claim upon vacant mineral land of the United States. To do this, under this provision of the statute, it was necessary . . . that he state in his location certificate 'if the whole or any part of the new location is located or [as] abandoned [or forfeited] property.' A mere marking of the ground, and posting notices proper for an original location, was not sufficient. A relocation of a forfeited claim must comply with this section of the statute to be valid."

The respondent argues that the location certificate men-·
tioned in this section means the notice or certificate which is
recorded with the county auditor under the provisions of
Rem. & Bal. Code, § 7358 (P. C. 345 § 15), and that the
only things necessary to be stated in the posted notice are
the name of the locator or locators, the date of the discovery,
and the name of the lode or claim.   Those are the require-
ments specifically mentioned in § 7359 (P. C. 345 § 17) of
the code for an original or new location.   Under Rem. & Bal.
Code, § 7358 (P. C. 345 §15), the notice to be recorded
within ninety days after the discovery and posting of the
original notice must contain the name or names of the locator,
the date of the location, the number of feet in length claimed
on each side of the discovery, the general course of the lode,
and such a description of the claim or claims, located by refer-
ence to some natural object or permanent monument, as will
identify the claim; and respondent contends that, in case of
a relocation, the location certificate (to be recorded) must
contain one other requisite, which is that it must state if the
whole or any part of the new location is located as abandoned
property.   There is just as much question under this section
providing for a relocation of mining claims as to whether any
notice or certificate is required to be recorded at all, as there
is as to whether the notice or certificate must state whether
it is located as abandoned or forfeited property.   We assume,
however, that a notice or certificate should be recorded to com-
ply with the law.   These statutes for local regulation of
location of mining claims and protecting the possession there-
of are statutes of peace and repose, intended to prevent
disorder in claiming and holding mining claims.   The disposi-
tion of the mining ground itself is wholly within control of
the Federal government.

It will be observed that the statute for relocation of mining
claims specifically provides that a new location monument
shall be located, and the location certificate shall state if the
whole or any part of the new location is located as abandoned

property. We certainly think that this means exactly what it says—that a new location monument shall bear the relocator's notice that he has relocated the original location in whole or in part as abandoned or forfeited property. We are strengthened in this conclusion by the consideration that the original notice of the locator or relocator is that which initiates his right to the possession of a mining claim. His possession is protected from the time of his original notice if upon vacant and unoccupied mining ground, and that of a relocator from the time of posting his relocation notice if the relocation is valid. The ground itself usually bears evidence of having been previously located as a mining claim. The relocator ordinarily knows that he is not the original discoverer and locator, as respondent necessarily did in this case. The original location, however, must be protected so long as the original locator is in possession or has complied with the law, and has not manifestly abandoned or forfeited the location. Lindley, Mines (3d ed.), § 408. When, therefore, the statute says that the location certificate shall contain a statement as to whether it is located in whole or in part upon forfeited or abandoned ground, we think that it obviously and necessarily refers to the notice to be posted upon the ground. The relocation notices of .the respondent were therefore insufficient, and were invalid under the statute.

II. There is a further and substantial reason why, in our opinion, the attempted relocation by the respondent was invalid, and that is that the appellant had resumed work in good faith and expended large sums of money for the purpose of developing the mine after the first of January, 1913, regardless of whether or not the previous year's assessment work had been fully done. The evidence is abundant and, we think, overwhelming to the effect that the donkey engines, wire cable, and all the labor used in moving and installing the same, were intended specifically for the development and operation of the mines and not of the railway. It is true that they were to be secondarily used for the purpose of aiding in

constructing the railway, but the railway itself was intended
to be an aid and cooperator with the mine.  The lower court
seems to have taken the view that, because these expenditures
were partly for the railway company ultimately, they did not
constitute assessment work, and that actual work upon the
mining claims themselves by the appellant's employees was
not started until July 21, 1913, or after the respondent's
initiatory right was secured by posting the notices of reloca-
tion.  The trial court's finding that the appellant had not
resumed assessment work on the group of claims prior to the
relocation by the respondent was undoubtedly based upon this
theory.  We are satisfied it was erroneous.  The burden of
proving a forfeiture was upon respondent.  27 Cyc. 601.

The evidence is almost uncontroverted that several thou-
sand dollars had been expended in furnishing and moving
the engines and other material and in building and improving
trails and roads for the better development of the mine, com-
mencing about May 26, 1913, and continuing without inter-
ruption until the time at which respondent attempted to re-
locate said claims.  The evidence is overwhelming that the
appellant had no intention whatever of abandoning the mining
claims or any of them, but on the contrary was spending large
sums of money for labor and materials to develop them.  The
respondent himself was employed by the appellant in laboring
for a time to that very end.  The respondent could not claim,
with any show of good faith whatever, that he believed appel-
lant had abandoned, or was intending to abandon, any of said
claims.  He testified that he relocated the claims in question
for the reason, as he said, that he had been informed by Mr.
Curtis, another of the employees and a stockholder of the
appellant, that appellant had not done the larger part of
the assessment work for 1912.  He knew the precise situation
and boundaries of appellant's claims.  The penalty for failure
to comply with the requirements of the law in respect to
performance of annual labor is that the location shall be

open to relocation in the same manner as if no location had ever been made.    U. S. Rev. Stats., § 2324.

The term "forfeiture" does not appear in the statute, but the courts employ it as a comprehensive word indicating a legal result flowing from a breach of condition subsequent, subject to which the locator acquires his title.    The courts do not incline to the enforcement of this class of penalties, which have always been deemed in law odious.    Lindley, Mines (3d ed.), § 645; *National Milling & Mining Co. v. Piccolo, supra; Emerson v. McWhirter*, 133 Cal. 510, 65 Pac. 1036.    The Federal statute also provides that:

"Upon a failure to comply with these conditions [assessment work] the claim or mine upon which such failure occurs shall be open to relocation in the same manner as if no location of the same had ever been made; *provided*, that the original locators, their heirs, assigns, or legal representatives, have not resumed work upon the claim after failure and before such location."    U. S. Rev. Stats., § 2324.

A forfeiture does not ensue from the mere failure to comply with the law.    It requires the intervention of a third party and a relocation of the ground before any forfeiture can arise.    When thereby such forfeiture becomes effectual, the estate of the original locator is hopelessly lost, and there is no possibility of its being restored.    Lindley, Mines (3d ed.), § 651.    Resumption of work at any time prior to the lawful inception of an intervening right prevents forfeiture.    *Belk v. Meagher*, 104 U. S. 279.

One seeking to avail himself of the failure of a preceding locator to comply with the law, in order to secure a relocation of a mine, must establish such failure by clear and convincing proof, and the court will construe a mining regulation or custom so as to defeat a forfeiture if it can, and every reasonable doubt will be resolved in favor of the validity of the mining claim as against the assertion of a forfeiture.    27 Cyc. 600; Lindley, Mines (3d ed.), §§ 651, 654; *Whalen Consol. Copper Min. Co. v. Whalen*, 127 Fed. 611; *McCulloch*

*v. Murphy*, 125 Fed. 147. The expense of getting the machinery to the mine which, when used, would tend to the development of the mining claims, will be allowed on the annual assessment work on the claims, although said machinery and expenses incurred are not within the boundaries of the claims. *Battersby v. Abbott*, 9 Cal. 568.

All the work done by the stockholder Fengler and his associates and the employees under him, in moving the engines and cable and building and repairing roads and trails, was done for the copper company, according to Fengler's own testimony, and his solemn declaration by way of lien claim against the Florence-Rae Copper Company's mineral claims. All work done for the railway company was excluded from this lien. A sum largely in excess of $2,000 was spent for labor alone for the benefit of the appellant's mineral claims, commencing in May, 1913. We are convinced that this constitutes such a resumption of work in good faith before the alleged relocation that it defeats respondent's attempted relocation. There is some suggestion in the record on the part of respondent that this is a question of fact on which there is a conflict of testimony, and which the trial court decided on the facts. But as we have said before, we do not consider that there is any conflict of evidence worthy of note upon this question. It is true that secretary Brackett testified that the cost of the donkey engines was charged by him upon the railway company's account. But that does not in any way controvert the fact, established by other witnesses of both the respondent and the appellant, that they were purchased, and the labor in moving and installing them, and other materials and labor, were furnished, for the purpose of improving and facilitating the development of the mines.

The decree of the lower court will therefore be reversed, and the cause remanded with instructions to grant the relief prayed for by appellant.

MORRIS, C. J., MOUNT, PARKER, and CHADWICK, JJ., concur.