[No. 21889. Department One. August 2, 1929.]

F. A. KARNES et al., *Respondents,* v. T. E. FLINT et al., *Appellants.*[1]

[1]Reported in 279 Pac. 728.

226

*H. A. Martin,* for appellants.
*Bausman, Oldham & Eggerman,* for respondents.

BEALS, J.—This litigation involves the possessory rights to two groups of mining claims in the Mount Constance mining district of Jefferson county, claimed under location notices and relocation notices, posted and filed in compliance, or attempted compliance, with

the Federal mining laws and the mining code of this state.

Plaintiff F. A. Karnes, together with one L. A. Wallin, during the year 1918 located, on the south slope of Mount Constance, sixteen lode mining claims, supposed to be valuable for the manganese therein contained, which they designated as the ''Elkhorn Group of Mining Claims.'' It appears from the testimony that there are three ore-bearing ledges on the mountainside, running approximately north and south, up and down the slope. By mistake, the original locators established their sixteen claims across, instead of along, the ledges.

During the month of January, 1925, Mr. Karnes, together with defendant H. I. Soles and one Dowling, incorporated the plaintiff American Manganese Corporation, having a capital stock of two million non-par value shares, for all of which, with the exception of two thousand shares, Mr. Karnes subscribed, paying therefor by quitclaiming to the corporation his interest in the Elkhorn Group. Mr. Karnes has been, ever since the organization of the corporation, its president, one of its trustees and the principal stockholder. Mr. H. I. Soles was, from the date of the organization of the corporation until March, 1928, one of its trustees and also its secretary-treasurer. After the commencement of this action, Mr. Wallin quitclaimed to the corporation his interest in the Elkhorn Group.

In March, 1925, Mr. Karnes relocated the claims correctly so that they ran along, instead of across, the lodes, the location notices being signed in the name of the American Manganese Corporation (which will hereinafter be referred to as the corporation). During the following July, Mr. Karnes, in his own name, located a group of twelve additional claims, which he called ''Extension to Elkhorn Group,'' which claims

border on one end of the Elkhorn Group and, with it, form something like a reversed letter L. October 15, 1925, Mr. Karnes filed for record the location notices of his extension group of claims, but failed to file the notices of amended location of the claims of the original Elkhorn Group. He did, however, file for record his affidavit stating that the Elkhorn Group "has been rearranged to comply with the law."

During the assessment year 1925-26, a cabin was built on claim extension 4, and trails were constructed across portions of the Elkhorn Group. At the time of the trial, the Elkhorn Group was owned by the corporation and the Extension Group by Mr. Karnes, each in severalty.

Sometime after June 30, 1927, defendant S. J. Witcombe, believing that no proper or sufficient assessment work had been done during the preceding assessment year to hold the mining claims, attempted to relocate the ground. Defendant Witcombe offered no evidence on the trial of the action, and apparently abandoned any rights which he might have acquired under the location notices which he posted.

In February, 1928, defendant Rodriguez made an examination of the ground embraced within the two groups of claims and, believing that default had been made in the performance of the required annual assessment work, attempted to locate thirteen claims along the three ore ledges, which he called the "Constance Group of Mining Claims," his notices of location being filed for record February 27, 1928.

Defendants concede that these location notices were defective in that they failed to comply with the law, the notices not stating that the claims were located upon abandoned ground. Rem. Comp. Stat., § 8629; Lindley on Mines, § 408; *Florence-Rae Copper Co. v. Kimbel,* 85 Wash. 162, 147 Pac. 881. Mr. Rodriguez,

realizing that his first notices were fatally defective, posted amended notices in which it was stated that the locations covered abandoned ground, which amended notices were filed for record in the office of the county auditor within ninety days from the date of the posting of the original notices.

The evidence introduced by plaintiffs was to the effect that, during the assessment year 1926-27, Mr. Karnes, out of his own means, paid one Metzler for the performance of fifty-five days' work on the claims, at the rate of five dollars a day, and that, in June of that year, Mr. Karnes himself and a man named Cole each worked on the claims nine days, and that they left provisions and tools in the cabin on claim extension 4; that, during the assessment year 1927-28, Mr. Karnes, in the month of August, took in provisions by pack horses, and himself worked five days on the claims, awaiting the arrival of Mr. J. T. Hubbard, a mining engineer then in the employ of Robert M. Adams Company, a prospective purchaser of the properties. Mr. Hubbard not arriving, Mr. Karnes departed, leaving tools and provisions in the cabin. This same month, Mr. Karnes delivered to defendant H. I. Soles, as his agent, a written authorization to sell all his interest in the mining claims and the corporation for five thousand dollars net.

The Adams Company, during the following September, having taken an option on both groups of mining claims, Messrs. Karnes and Hubbard visited the property in December, each putting in eleven days' work. December 31, defendant Witcombe posted on the ground thirty location notices in an attempt to relocate the same. February 26, 1928, Messrs. Karnes and Hubbard, together with one Smith, visited the property and discovered the location notices which had been posted by defendant Rodriguez, who, as Mr.

Karnes testified, was occupying the cabin together with defendants R. O. Soles, C. P. Haugen and A. Ferguson, where they had been consuming the provisions and using the tools left there by Mr. Karnes.

Between the date last mentioned and June 30 following, work was done on the properties on behalf of plaintiffs, with the intention of complying with the law requiring that assessment work be performed annually in order to hold the claims. It is important to note that this work was commenced prior to the posting by Rodriguez of his amended location notices.

Plaintiffs jointly instituted this action, in which they sought a decree quieting their titles to the two groups of mining claims as against defendants and each of them. From a decree in plaintiffs' favor, defendants appeal.

Appellants urge forty-three assignments of error, the first group of which are based upon the refusal of the trial court to sustain their contention that there was an improper joinder of parties plaintiff. Respondents alleged, in effect, a joint ownership, on the part of the two respondents, of the two groups of mining claims. As a matter of fact, respondent corporation owned one group and respondent Karnes owned the other group, each ownership being in severalty. Appellants earnestly contend that this state of facts presents an improper joinder of parties plaintiff and of several and distinct causes of action, and that the proof showed a variance which entitled appellants to an order of dismissal. Respondents contend that the evidence showed a conspiracy on the part of appellants for the purpose of depriving respondents of their respective properties. The evidence shows that some of the location notices posted by appellant Rodriguez covered portions of claims in both the Elkhorn and the Elkhorn Extension Groups.

It is, of course, obvious that appellants were in nowise misled by the allegations of respondents' complaint, as the facts of the ownership of the respective groups of claims must have been well known to all parties interested. While the trial court should probably have granted appellants' motion to require respondents to make their complaint more definite and certain by setting forth therein, or by way of a bill of particulars, the respective interests of respondents in the claims referred to in the complaint, we do not find that the denial of this relief to appellants resulted in such prejudice as now requires any action by this court. It does not appear that appellant sought to elicit the desired information by way of interrogatories, after the denial of their motion to make the complaint more definite, and we hold that, as to this matter, the record fails to show the commission of reversible error by the trial court.

In our opinion, under the circumstances disclosed by this record, respondents properly joined as plaintiffs under Rule II of the "Rules of Pleading, Procedure and Practice," adopted by this court January 14, 1927, pursuant to ch. 118, Laws of 1925, Ex. Ses., p. 187, paragraph 1 of which rule reads as follows:

"All persons may be joined in one action, as plaintiffs, in whom any right to relief in respect of, or arising out of, the same transaction or series of transactions, is alleged to exist, whether jointly, severally or in the alternative, where, if such persons brought separate actions, any common question of law or fact would arise: *Provided,* That if, upon the application of any party, it shall appear that such joinder would embarrass or delay the trial of the action, the court may order separate trials or make such other order as may be expedient, and judgment may be given for such one or more of the plaintiffs as may be found to be en-

titled to relief, for the relief to which he or they may be entitled." (Rem. 1927 Sup., § 308-2.)

Appellants claim title to both groups of claims, certain of the location notices under which appellants claim embracing ground lying within both groups claimed by respondents respectively. Respondents contended that the assessment work performed on their behalf was for the benefit of both groups of claims, and that appellants had conspired fraudulently to obtain title to both groups. In our opinion, common questions both of law and fact were presented on the trial of this action to a sufficient extent to justify the trial court in maintaining jurisdiction to determine the respective rights of the parties to both groups of mining claims and to adjudicate such rights in one decree. The record is silent as to any application on the part of appellants for separate trials as to the two groups of claims, or for any other expedient order on the ground that a trial under plaintiffs' joint complaint would embarrass or delay the trial or for any other reason be inexpedient, as provided for in the section of Rule II above quoted. (Rem. 1927 Sup., § 308-2.)

We conclude that appellants' assignments of error based upon the joinder of respondents as plaintiffs, and the other matters above referred to of similar import, are without substantial merit.

■ Appellants complain of the joinder of Carrie Soles, wife of appellant H. I. Soles, and of Grace M. Witcombe, wife of defendant S. J. Witcombe, as defendants, and contend that the naming of these parties as defendants constituted such misjoinder of parties defendant that appellants' demurrer to respondents' complaint should have been sustained, or at least that the entry of judgment for costs against these two appellants was erroneous. While it is true that the pos-

sessory right which the locator of a mining claim obtains is not community property *(Phoenix Min. & Mill. Co. v. Scott,* 20 Wash. 48, 54 Pac. 777; *Black v. Elkhorn Min. Co.,* 163 U. S. 445, 16 Sup. Ct. 1101), it certainly is not the law that the joinder of the two appellants referred to, as defendants, constituted such misjoinder as rendered the complaint obnoxious to a demurrer.

■ Appellants Witcombe answered jointly, praying for a dismissal of the action, and that their title to the mining claims be quieted as against respondents. Appellant H. I. Soles and his wife, Carrie Soles, answered jointly with other of the appellants, praying for the dismissal of plaintiffs' action, that the title of Arbano Rodriguez to the property be quieted, and that they recover their costs and have such relief as may be proper. Neither Mrs. Witcombe nor Mrs. Soles filed a disclaimer, and under the record, as made, the joinder of these ladies as parties defendant did not render respondents' complaint demurrable, nor does the award of costs against them in the decree constitute error. A person named as a defendant in an action to quiet title claiming no interest in the property may promptly disclaim, and, failing to do so, stands the hazard of the trial and, under such circumstances as are disclosed by the record before us, cannot complain of an adverse judgment for costs.

■ Respondent corporation had been stricken from the rolls by the secretary of state as delinquent some time before the institution of this action, at which time respondent corporation was still delinquent. Prior to the trial, the corporation had been reinstated and was once more in good standing. Under the decision of this court in the case of *Eastman & Co. v. Watson,* 72 Wash. 522, 130 Pac. 1144, respondent corporation was, under these circumstances, entitled to go to

234

trial, and appellants' assignments of error based upon respondent corporation's one-time delinquency are not well taken.

Appellants' testimony upon the merits, relied upon by them to obtain a reversal of the decree entered, was to the effect that appellants Rodriguez and Ferguson visited the property February 4, 1928, and, finding no one in possession and concluding that the assessment work for the current assessment year had not been performed, entered upon the task of relocating the claims, upon which work they were engaged continuously until February 24, the location notices having been filed for record on the twenty-seventh of that month, and amended location notices having been posted and filed early in March. Appellants contend that the original notices of location filed by Rodriguez were subject to amendment under Rem. Comp. Stat., § 8626, and cite the opinion of this court in the case of *Kirkpatrick v. Curtiss,* 138 Wash. 333, 244 Pac. 571, also 40 C. J. 808, together with authorities from other states.

Whether the location notices filed by appellant Rodriguez were void and not subject to amendment, or were merely defective and curable by proper notices filed within the time provided by law, we find it unnecessary to decide, as we are of the opinion that, as respondents went upon the ground between the date of the posting of Mr. Rodriguez's original notices and the posting by him of his amended notices, respondents gained the right to maintain their respective ownerships of the mining claims by performing the required amount of assessment work thereon, and that the posting by appellant Rodriguez of his amended location notices could not relate back to the date of his original location notices so as to cut off the intervening rights of respondents. In this connection, we will, for the

present, assume that, when respondents commenced to perform the assessment work on the property in February, 1928, they prosecuted the work continuously and without unreasonable interruption until a requisite amount of labor had been performed for the benefit of all the claims.

The original location notices posted by Mr. Rodriguez in February being defective, and respondents having resumed work upon the claims prior to the posting and filing by Mr. Rodriguez of his amended location notices, respondents gained the right to complete the required assessment work and hold the claims. This court in the case of *Knutson v. Fredlund,* 56 Wash. 634, 106 Pac. 200, referring to a somewhat similar situation, said:

"No forfeiture would result from nonperformance of labor unless a valid relocation was made by some third party before work was resumed by respondent."

In that case, the court held that the relocator had made no valid relocation and, consequently, could not question the assessment work done by the original locator. Again, in the case of *Florence-Rae Copper Co. v. Kimbel,* 85 Wash. 162 (p. 173), 147 Pac. 881, this court said, referring to an attempted relocation of mining ground:

"A forfeiture does not ensue from the mere failure to comply with the law. It requires the intervention of a third party and a relocation of the ground before any forfeiture can arise. When thereby such forfeiture becomes effectual, the estate of the original locator is hopelessly lost, and there is no possibility of its being restored. Lindley, Mines (3d ed.), § 651. Resumption of work at any time prior to the lawful inception of an intervening right prevents forfeiture. *Belk v. Meagher,* 104 U. S. 279.

"One seeking to avail himself of the failure of a preceding locator to comply with the law, in order to se-

cure a relocation of a mine, must establish such failure by clear and convincing proof, and the court will construe a mining regulation or custom so as to defeat a forfeiture if it can, and every reasonable doubt will be resolved in favor of the validity of the mining claim as against the assertion of a forfeiture. 27 Cyc. 600; Lindley, Mines (3d ed.), §§ 651,654; *Whalen Consol. Copper Min. Co. v. Whalen,* 127 Fed. 611; *McCulloch v. Murphy,* 125 Fed. 147. The expense of getting the machinery to the mine which, when used, would tend to the development of the mining claims, will be allowed on the annual assessment work on the claims, although said machinery and expenses incurred are not within the boundaries of the claims. *Battersby v. Abbott,* 9 Cal. 568.''

Appellants cite the case of *Kinney v. Lundy,* 11 Ariz. 75, 89 Pac. 496 (499), in which it was held that a location notice might be amended, and that the word "void," as used by the legislature, should be held to mean "voidable." The court, however, referring to the filing of a corrected and amended location notice, remarks that it will not be effective as against intervening rights, and that, "where others in the meantime have initiated or maintained rights to the claim, such attempt to so cure the defect will be unavailing.'' To the same general effect, are the cases of *Thornton v. Kaufman,* 40 Mont. 282, 106 Pac. 361, 135 Am. St. 618; *Belcher Consolidated Gold Min. Co. v. Deferrari,* 62 Cal. 160; *Pharis v. Muldoon,* 75 Cal. 284, 17 Pac. 70; *Worthen v. Sidway,* 72 Ark. 215, 79 S. W. 777; *Klopenstine v. Hays,* 20 Utah 45, 57 Pac. 712.

Appellants, by claiming as relocators, admit the validity of some prior location of the property. 40 C. J. 850. It is clear that, under the mining code of this state, a notice of location, which is in fact posted upon ground which has theretofore been located, is, at least under ordinary circumstances, fatally defective if it fails to state that, by such notice of loca-

tion, ground theretofore located is claimed by the locator. We are not now concerned with any question which might arise if a locator, in good faith, posted notices upon ground which had been located and abandoned, being unaware of that fact, as we are satisfied from the record that all parties concerned well knew that the ground attempted to be located by appellant Rodriguez had theretofore been appropriated. As to such cases, the provision of our law is to the effect that the new location notices must state that they are filed in whole or in part upon abandoned property. *Gold Creek Antimony M. & S. Co. v. Perry*, 94 Wash. 624, 162 Pac. 996, and cases therein cited.

We have read the authorities submitted by the respective parties, and are satisfied that, under the facts shown, the resumption of the assessment work upon the properties on behalf of respondents in February, 1928, and before the posting by appellant Rodriguez of his amended notices of location, afforded respondents an opportunity to complete their assessment work for the current year and hold title to the properties, if the work which they performed was adequate and appropriate in character and amount. We now turn to a consideration of this question.

It is undoubtedly the law that, as stated by the supreme court of California, in the case of *Emerson v. McWhirter*, 133 Cal. 510, 65 Pac. 1036 (affirmed by the supreme court of the United States, 208 U. S. 25):

"Where a valid location of a mining claim has been made, and work done thereon in good faith, possession maintained, and no evidence appears from which an intention to abandon may be inferred, the court should construe the law liberally, to prevent forfeiture. Indeed, this is the rule generally as to forfeitures. The courts are reluctant to enforce a forfeiture, deeming this class of penalties odious in law; and it is well settled by decisions that forfeiture cannot be established

except upon clear and convincing proof of the failure of the former owner to have performed the labor to the amount required by law, the burden of proving which rests with the party asserting it. 2 Lindl. Mines, § 643 *et seq.*"

This principle also. finds support in the opinion of the United States circuit court for the district of Nevada rendered in the case of *Wailes v. Davies,* 158 Fed. 667, where the court, in the course of its opinion, the principal question in the case being as to whether or not certain mining ground was subject to relocation, said:

"The burden of proof is always upon the party seeking to establish the forfeiture of a mining claim. Courts have always been very reluctant to enforce forfeitures; 'they have settled the doctrine that a forfeiture cannot be established except upon clear and convincing proof of the failure of the former owner to have work performed or improvements made to the amount required by law.' 2 Lindley on Mines, §§ 643, 645; *Hammer v. Garfield M. & M. Co.,* 130 U. S. 291, 301, 9 Sup. Ct. 548, 32 L. Ed. 964."

In the case at bar, respondents had established and maintained their possessory rights at considerable trouble and expense over a period of years, and when it appeared that a third party had become interested in the proposition and that the claims might have some present sale value, appellants sought to acquire the rights formerly enjoyed by respondents and reap any advantage which might accrue from the interest displayed in the property by the prospective purchaser. In such a case, a relocator is entitled to rely upon and take advantage of the strict letter of the statute, but the policy of the law does not favor forfeitures, and in a proceeding such as this, in which both sides invoke the equitable jurisdiction of the court and seek a decree quieting title, it must clearly appear that the prior

owners' rights have lapsed before the relocator can prevail, and in any event he must prevail upon the strength of his own claim rather than upon the weakness of that of his opponent.

"The courts do not incline to the enforcement of this class of penalties, which have always been deemed in law odious." *Florence-Rae Copper Co. v. Kimbel,* 85 Wash. 162, 147 Pac. 881.

To the same effect, is the opinion of the supreme court of Oregon in the case of *Richen v. Davis,* 76 Ore. 311, 148 Pac. 1130.

There was testimony on behalf of respondents to the effect that some work was done on their behalf in August and in December, 1927, and that, upon completion of the work done during these months, provisions and tools were left upon the property to facilitate a resumption of the assessment work at some later date. Whether or not the fact that this work, admittedly insufficient to hold the claims, had been done, left the claims in February, 1928, subject to relocation, we find it unnecessary to decide.

The trial court entered findings of fact and conclusions of law, including an express finding to the effect that respondents resumed work on the claims February 25, 1928, and prosecuted the same until July 1, 1928; that all of the assessment work was expended upon the claims as a group and amounted to the reasonable value of approximately $2,926. Appellants excepted to this finding and strenuously attack the same, contending that the work done was not of as great value as that fixed by the trial court; that it did not benefit the two groups of claims; that the work was insufficient as to amount and inadequate in kind. As to whether labor performed on a particular claim, or outside the boundaries of a claim, or of a group of contiguous claims, is sufficient to hold the property,

the law is, as contended by appellants, that the work must be performed under some general plan of development and must reasonably tend to develop all of the claims. *Wailes v. Davies,* 158 Fed. 667; *Copper Mountain M. & S. Co. v. Butte & Corbin Consol. C. & S. M. Co.,* 39 Mont. 487, 104 Pac. 540; *Morgan v. Myers,* 159 Cal. 187, 113 Pac. 153. This rule of law must be applied to each different state of facts as presented for decision, the rule of law being clear and simple, but it often being extremely difficult to determine whether or not a particular state of facts falls within or without the same. Respondent Karnes was the principal stockholder in respondent corporation. As a general proposition, we approve the doctrine laid down in the case of *Hawgood v. Emery,* 22 S. D. 573, 119 N. W. 177, 133 Am. St. 941, in which the court says:

"Where there are several claims adjacent held by different persons and work beneficial to all of said claims can best be done on one of them, then, under a proper agreement between the owners of said claims, development work can all be done on one claim, and be credited to the several claims, such work being a part of the general plan or scheme for the development of the several claims."

In this connection, we have carefully examined the record and the authorities cited bearing upon this question. We are of the opinion that the finding of the trial court is supported by a preponderance of the competent evidence, and that the assessment work performed on behalf of respondents was sufficient to hold the possessory rights to the mining claims enjoyed by respondents, respectively.

Appellants complain because the decree, as entered herein, permanently enjoins them from entering upon the twenty-eight mining claims referred to in respondents' complaint, from bringing tools or equip-

ment thereon, and from in anywise disturbing plaintiffs' possession thereof, for the reason that appellants contend that this provision of the decree would prevent their entering upon the ground embraced within the mining claims in case respondents should at some future time abandon the same. We do not understand the decree to have the effect attributed thereto by appellants. It restrains them from entering upon the "mining claims" and from disturbing plaintiffs' possession thereof. It does not permanently enjoin appellants from entering upon certain territory described by metes and bounds, but refers to mining claims only. If for any reason, at some time in the future, respondents' possessory rights to these mining claims, or any of them, are abandoned or for any reason lapse, any entry made in good faith by appellants upon the ground embraced within respondents' notices of location would constitute no violation of the decree in this action, because the ground would then be no longer a "mining claim" within the purview of the decree herein. While the decree might properly have referred more specifically to the nature of the rights enjoyed by respondents with which appellants were enjoined from interfering, we do not find that the decree in its scope can properly be construed to interfere with any rights which appellants may at some future time, due to changed conditions, have an opportunity to acquire.

The trial court found that the attempted relocation of the property covered by respondents' claims was made as the result of a conspiracy entered into by certain of the appellants for the purpose of defrauding respondents of their property. While respondents' contention on this point finds much support in the record and is supported by an express finding of the trial court, our view of the facts renders a discussion

of appellants' assignments of error based upon this finding unnecessary.

Appellants assign many errors upon the admission of testimony and exhibits over their objection. A detailed discussion of the questions raised by these assignments would extend this opinion beyond all reasonable length. We are of the opinion that the decree entered is supported by competent testimony and that the decree is right.

Decree affirmed.

FULLERTON, TOLMAN, HOLCOMB, and MILLARD, JJ., concur.