42 Wn.2d 273 (1953)
254 P.2d 758
PORTLAND ASSOCIATION OF CREDIT MEN, INC., Appellant,
v.
ROY T. EARLEY, Respondent.[1]
No. 32133.
The Supreme Court of Washington, Department One.
March 17, 1953.
Ned Hall, for appellant.
Henderson, Carnahan, Thompson & Gordon, for respondent.
WEAVER, J.
This is an appeal from a judgment dismissing plaintiff's action.
By reason of a contract made September 1, 1945, Roy T. Earley (defendant and respondent in this action) became indebted to George Haley. Shortly thereafter, Haley became insolvent. On February 12, 1946, Haley made a written common-law assignment for the benefit of his creditors to Louis Schaefer, a Vancouver lawyer, and the Portland Association of Credit Men, Inc., an Oregon corporation (plaintiff and appellant in this action). Earley, notified promptly of Haley's assignment for the benefit of his creditors, disputed the amount he owed. He negotiated for several months with the assignees. The parties finally agreed that Earley owed $4,381.50. The amount, however, was not paid.
January 8, 1947, one Ina Yelton secured a judgment in Cowlitz county against Haley for $8,362.46. May 8, 1947, she had a writ of garnishment issued on the judgment and served on Earley.
May 21, 1947, Earley answered the writ of garnishment. In it he admitted his indebtedness to Haley prior to February 12, 1946; alleged Haley's common-law assignment to plaintiff on February 12, 1946; and admitted Haley's assignment of his claim against Earley.
Specifically, garnishee defendant Earley's answer set forth:
"IV. That because of the facts set forth in the next preceding paragraph hereof, this answering garnishee defendant *275 alleges that it is in doubt as to whom said money may belong and therefore tenders into Court herewith said sum of four thousand three hundred eighty-one dollars and fifty cents ($4,381.50) to await the outcome of said garnishment proceedings and the final determination of the Court as to whom said money belongs.
"V. This answering garnishee defendant further alleges upon information and belief that there are taxes and other charges against the aforesaid sum of four thousand three hundred eighty-one dollars and fifty cents ($4,381.50) in favor of the State of Washington and in favor of the United States of America which may be a prior lien on said fund; that this answering garnishee is not informed as to the amount of said taxes and other charges."
At the time of filing this garnishment answer, Earley deposited $4,381.50 with the Cowlitz county clerk. (Respondent Earley's present counsel did not represent him in the garnishment proceeding.) Two days later (May 23), counsel for Mrs. Yelton had "Judgment On Answer of Garnishee Defendant" entered ex parte, directing the clerk to pay Earley twenty-five dollars attorney's fees and to pay the balance to Mrs. Yelton's attorney.
The order provided that the payment thereunder would release Earley from any and all further liability to "George Haley and/or Avis I. Haley, and the Yelton Plumbing and Heating Company, and their assignees." (Italics ours.) Regarding this, the Pierce county superior court, which tried the instant case, said in its memorandum opinion
"... the court [of Cowlitz county] was fraudulently induced to sign an order directing the fund to be paid to Mrs. Yelton's attorney."
The plaintiff (Portland Association of Credit Men, Inc.) and Louis Schaefer did not know of the Cowlitz county action until after the judgment was entered in the garnishment proceedings.
Having learned of the Cowlitz county action, Schaefer and the Portland Association of Credit Men, Inc. filed a complaint in intervention in the garnishment proceedings on June 9, 1947. They asked that the order of May 23, 1947, be set aside, since it had been entered without hearing and *276 without notice to them; that Mrs. Yelton be directed to redeposit the funds in court; that they, as assignees of Haley, be decreed entitled to the funds; and that, in the event Mrs. Yelton refused to deposit the funds in court, they have judgment against her. The complaint in intervention was served upon counsel for Mrs. Yelton. He made a general appearance for her.
The Cowlitz county action was permitted to rest for almost three years. Louis Schaefer died in May, 1948. March 30, 1950, counsel for Mrs. Yelton filed a general demurrer.
The present action by the Portland Association of Credit Men, Inc. (plaintiff and appellant) was filed in Pierce county against Roy T. Earley (defendant and respondent) May 29, 1950. It alleged Earley's debt to Haley; Haley's assignment of the debt to plaintiff; and the nonpayment of the debt.
Defendant's first answer, filed June 19, 1950, disclosed the pendency of the Cowlitz county action. March 12, 1951, the superior court of Cowlitz county sustained Mrs. Yelton's demurrer to the complaint in intervention
"... on the grounds and for the reason that there was a final appealable order entered prior to the time of the filing of the Complaint in Intervention and that there was nothing left to intervene in. The Court, therefore, has no jurisdiction over the matters contained in the matters in the Complaint in Intervention."
In his amended answer, filed April 3, 1951, defendant Earley admitted he had become indebted to Haley in the sum of $4,381.50, but interposed three affirmative defenses:
First: That the plaintiff, a foreign corporation, in taking the common-law assignment, had been doing business in the state of Washington without first qualifying to do business and without paying its license fees; hence it was precluded from maintaining this action.
Second: That the serving and filing by plaintiff of the complaint in intervention in the Cowlitz county garnishment proceedings constituted an election of remedies.
Third: That in response to the writ of garnishment in the Cowlitz county proceedings, defendant had made full disclosure of the alleged common-law assignment by Haley to *277 plaintiff and had paid his (Earley's) indebtedness into court; that the deposit had been ordered paid to Mrs. Yelton.
The trial court concluded that plaintiff had a right to maintain this action and that the doctrine of election of remedies did not apply. As to the third affirmative defense, the trial court concluded:
"That the defendant [Earley] in its answer to the Writ of Garnishment made a full disclosure of all facts required by law to be made to said Court, which Answer was, in effect, that by reason of this assignment no funds were due George Haley and wife, which could be controverted by a reply and the issue tried out but that the Cowlitz County Court was fraudulently induced to sign an Order directing the funds to be paid to the attorney for Ina L. Yelton. That the defendant was not required to give notice to the plaintiff of its action in paying this money into the registry of the court; that the disclosure in its answer to the Writ of Garnishment was sufficient and that it then became the duty of the Cowlitz County Court either to accept the answer or cite in the third party claimant as a necessary party." (Italics ours.)
Plaintiff appeals from a judgment dismissing its action.
[1] We examine each of the defenses urged by defendant upon the theory that we will affirm the trial court if proper legal grounds exist, in spite of the fact that it may have based its decision upon an erroneous reason. Rawlins v. Nelson, 38 Wn. (2d) 570, 231 P. (2d) 281, and cases cited.
The trial court found that the action of plaintiff corporation, in accepting and carrying out the common-law assignment of February 12, 1946, constituted doing business in the state of Washington. Plaintiff commenced this action May 29, 1950. The certificate of the secretary of state discloses that plaintiff qualified to do business in this state as a foreign corporation July 16, 1951. The secretary further certified that the plaintiff
"... is duly qualified to do business in this state at the date of this Certificate [October 24, 1951] and is in good standing with all license fees paid to the end of the fiscal year, June 30, 1952."
*278 The case was tried November 14, 1951.
Rem. Rev. Stat. (Sup.), § 3836-12 (cf. RCW 23.28.090) provides:
"No corporation shall be permitted to commence or maintain any suit, action, or proceeding in any court of this state, without alleging and proving that it has paid or contracted to pay as hereinafter provided, all fees due the State of Washington under existing law or this chapter." (Italics ours.)
The present statute was enacted in 1937. Laws of 1937, chapter 70, § 12, p. 245. The italicized portion above appears in Rem. Rev. Stat., § 3842, enacted in 1907. Laws of 1907, chapter 140, § 7, p. 271.
[2] A nonresident corporation, which is not engaged in business within the state, or which is engaged in interstate commerce, may maintain an action without alleging and proving that it has qualified to do business and has paid its license fees. Rawleigh Co. v. Harper, 173 Wash. 233, 22 P. (2d) 665; Rawleigh Co. v. Graham, 4 Wn. (2d) 407, 103 P. (2d) 1076; 129 A.L.R. 596; Procter & Gamble Co. v. King County, 9 Wn. (2d) 655, 115 P. (2d) 962; Seavey Hop Corp. of Portland v. Pollock, 20 Wn. (2d) 337, 147 P. (2d) 310. However, if the foreign corporation is doing business within the state, then it must qualify and pay its license fee in order to maintain an action. Dalton Adding Mach. Sales Co. v. Lindquist, 137 Wash. 375, 242 Pac. 643, and cases cited.
As applied to domestic corporations, we have held that the license fee statute is a revenue measure, and that the prohibition of maintaining an action when the fees are unpaid is intended to enforce the collection of the tax. State ex rel. Preston Mill Co. v. Howell, 67 Wash. 377, 121 Pac. 861; Eastman & Co. v. Watson, 72 Wash. 522, 130 Pac. 1144; Commercial Bank & Trust Co. v. Wenatchee Park Land & Irr. Co., 106 Wash. 181, 179 Pac. 798. In Northwest Motor Co. v. Braund, 89 Wash. 593, 154 Pac. 1098, the plaintiff was permitted to pay its license fee after trial but before the entry of the findings of fact and the decree. In Karnes v. Flint, 153 Wash. 225, 279 Pac. 728, a corporate plaintiff, which had been stricken from the rolls of the secretary of state for nonpayment *279 of its license fee, was entitled, upon payment and reinstatement, to go to trial. Nonpayment of the license fee affects only the corporation's capacity to maintain the action at time of trial. Washington Printing Co. v. Osner, 99 Wash. 537, 169 Pac. 988 (see annotation 75 A.L.R. 446). In fact, if the issue of compliance with the statute is not tendered at the proper time, it is waived. Mutual Reserve Ass'n v. Zeran, 152 Wash. 342, 277 Pac. 984, and cases cited.
[3] The certificate of the secretary of state discloses that plaintiff was qualified to do business in the state of Washington at the time of trial. We discern no reason why the rules applicable to a domestic corporation should not apply to a foreign corporation under the facts of this case. The trial court did not err in concluding that plaintiff had proved its capacity to maintain the action. Defendant cannot escape this conclusion by urging that plaintiff did not pay the correct amount of license fee required. That is a matter between the plaintiff and the state. We cannot go back of the certificate of the secretary of state certifying that plaintiff was qualified to do business in this state at the time of trial.
The trial court concluded that plaintiff had not made an election of remedies when it filed a complaint in intervention in the garnishment proceedings after the court had entered judgment directing payment of defendant's deposit to Mrs. Yelton. With this we agree.
The right to intervene is governed by Rem. Rev. Stat., § 202 (cf. RCW 4.08.190), which provides:
"Any person may, before the trial, intervene in an action or proceeding, who has an interest in the matter in litigation, in the success of either party, or an interest against both." (Italics ours.)
[4] A complaint in intervention is too late if filed after judgment. Seattle & Northern R. Co. v. Bowman, 53 Wash. 416, 102 Pac. 27, and cases cited; see Nevin v. Pacific Coast & Norway Packing Co., 105 Wash. 192, 177 Pac. 739; annotation 127 A.L.R. 668.
[5] Invoking a claimed remedy, which is not available in law, is not an election of a remedy which precludes thereafter *280 invoking a remedy which is available in law. In re Pulver, 146 Wash. 597, 264 Pac. 406, and cases cited.
This action stems from the fact that the Cowlitz county court "was fraudulently induced to sign an Order directing the funds to be paid to the attorney for Ina L. Yelton." This finding is supported by the record and admitted by respondent Earley in his brief.
When a writ of garnishment is served upon a garnishee, it casts upon him the responsibility of protecting his interests. By statute, the writ requires only that he
"... answer on oath what, if anything, he is indebted to the defendant, and was when such writ was served...." Rem. Rev. Stat., § 683 (RCW 7.32.040).
[6] There is nothing in our garnishment statutes which requires or authorizes a garnishee to pay his admitted indebtedness into court at the time he files his answer. In fact, the garnishment statutes contemplate that the garnishee shall not make payment until judgment has been entered against him. Rem. Rev. Stat., §§ 693 to 696; RCW 7.32.180-210. Should the defendant subsequently claim his debt against the garnishee, it is sufficient defense for him
"... to show that such indebtedness was paid ... under the judgment of the court in accordance with the provisions of this chapter." Rem. Rev. Stat., § 705; RCW 7.32.300. (Italics ours.)
Earley did not pay the money under judgment of the court.
[7] Prior to 1939, Art. 4101, Vernon's Texas Civil Statutes, was substantially the same as Rem. Rev. Stat., § 705. Although the Texas court was discussing a factual situation which differed from the instant case, it said, in Shoemaker v. Pace, 41 S.W. (Tex. Civ. App.) 498:
"`Garnishment rests wholly upon judicial process, and depends upon the due pursuit of the steps prescribed by law for its prosecution. It can borrow no aid from the volunteered acts of the garnishee. Such acts will be regarded as void so far as they interfere with the acts of third parties.' Drake, Attachm. 45lb; [citing authorities] ... No payment made by the garnishee, `except under legal compulsion, in the manner prescribed by law, will protect him. Hence there is a necessity, as well as great propriety, that the garnishee *281 should be enabled to ascertain whether the proceeding against him, if carried to fruition, will constitute a protection to him against a second payment to the defendant....' Drake, Attachm. 691, 692."
To the same effect is Pumphrey v. Hunter, 270 S.W. (Tex. Civ. App.) 237.
[8] Defendant Earley knew in 1946 that Haley had made an assignment for the benefit of his creditors. Haley's claim against Earley was thus transferred to plaintiff. First Fed. Sav. & Loan Ass'n of Coeur d'Alene v. Marsh, 19 Wn. (2d) 438, 143 P. (2d) 297. He negotiated a determination of the amount of his debt to Haley with the assignees. Mrs. Yelton also knew that Haley had made such an assignment. In her complaint against Haley filed February, 1946, she alleged his assignment as the event which made Haley's debt to her immediately due and payable. Thus we have, on the one hand, defendant Earley and Mrs. Yelton with full knowledge of plaintiff's position and ownership of Haley's claim against Earley, and, on the other hand, we find plaintiff entirely ignorant of Mrs. Yelton's action against Haley and her garnishment against Earley.
Under the facts of this case, it is not necessary for us to decide whether the Cowlitz county court should have made plaintiff a party (Rem. Rev. Stat., § 196; RCW 4.08.130) or whether Mrs. Yelton should have requested the court to make plaintiff a party. It is sufficient to point out that plaintiff was not a party to the garnishment proceedings, and that its rights in the subject matter of the garnishment could not have been determined in that proceeding.
In Bellingham Bay Boom Co. v. Brisbois, 14 Wash. 173, 44 Pac. 153, 46 Pac. 238, we said:
"We think an assignment of a chose in action in good faith and for value, and with no intent to hinder, delay or defraud creditors or subsequent purchasers, is complete and effectual as against third persons, upon its execution and delivery to the assignee, and does not acquire any additional force or validity by notice to the debtor. But, as between the assignee and the debtor, notice to the latter of the assignment is necessary in order to charge him with the duty of making payment to the assignee, for if in the absence of notice, he pay the *282 debt either to the original creditor or the creditor of such creditor, `proceeding by garnishment,' he will be exonerated from paying it again to the assignee. The garnishee in some respects occupies the position of a trustee, and is bound to protect, by legal and proper means, the rights of all parties to the chattels or credits attached in his hands; and if he receive notice of the assignment in time to bring it to the attention of the court, it is his duty to do so, and if he fail so to do, neither a subsequent voluntary payment to the creditor or garnisher, nor a judgment against him as garnishee, will be available as a defense to an action against him by the assignee." (Italics ours.)
A garnishee who holds another's money or property and entrusts it to the court before he is legally required to do so, must protect himself against the possibility of double payment. There is no provision in the garnishment statutes for making such deposits. He must act under Rem. Rev. Stat., §§ 198 to 200; RCW 4.08.150-170, which pertain to substitution and interpleader. As a condition precedent to the protection of the stakeholder, the statutes require that persons known by him to be interested in the money or property, must be made parties. Thus, protection is afforded to all who are interested. In Ward v. Ward, 14 Wash. 640, 45 Pac. 312, the garnishee deposited money with the clerk of the court before determination of the garnishment proceedings. The money was misapplied, and the garnishee was required to pay the same amount to the garnisher. We said:
"Nor could the instructions to the clerk, if given as claimed, avail the company [garnishee] as a defense, for it should have proceeded under the sections of the code aforesaid, [which are now those cited above] if it wanted to deposit the money and be discharged from liability."
We have recognized this as proper procedure in Mosher v. Bruhn, 15 Wash. 332, 46 Pac. 397; Smith v. Dement Bros. Co., 100 Wash. 139, 170 Pac. 555; Hillman v. Gray, 163 Wash. 406, 1 P. (2d) 318, 75 A.L.R. 1356; Osawa v. Onishi, 33 Wn. (2d) 546, 206 P. (2d) 498.
A garnishee may admit away his own right, over which he has power; but he cannot admit away another's right, over which he has no power. It is a plain proposition that *283 one, against whom there is an existing claim, cannot transfer it, by his own act, into an obligation to another. The right itself, and the power to enforce it, remain in the original owner, unless there is a novation by his consent or by force of legal proceedings. This cannot be accomplished by the voluntary act or ex parte action of either the debtor or garnisher. There must be action under process of the law itself which binds third parties interested in the subject matter of the garnishment.
Defendant Earley did not protect, "by legal and proper means, the rights of all parties to the chattels or credits attached in his hands."
The judgment is reversed, with instructions to enter judgment for plaintiff.
GRADY, C.J., MALLERY, HAMLEY, and DONWORTH, JJ., concur.
April 28, 1953. Petition for rehearing denied.
NOTES
[1] Reported in 254 P. (2d) 758.